**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARMIN DAVOODI, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　　vs.<br><br>ZETA GLOBAL HOLDINGS CORP., DAVID A. STEINBERG, and CHRISTOPHER GREINER,<br><br>　　　　　　　　Defendants. | **Case No. 1:24-cv-8961-DEH** |

**MEMORANDUM OF LAW IN SUPPORT OF AMIR KONIGSBERG'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF SELECTION OF LEAD COUNSEL**

## I.      INTRODUCTION

Amir Konigsberg respectfully submits this memorandum of law in support of his motion to: (i) appoint him as lead plaintiff in the above-referenced action pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), as amended by the PSLRA, 15 U.S.C. § 78u-4, and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; and (ii) approve his selection of KSF as Lead Counsel for the putative class. *See Metro Servs. v. Wiggins*, 158 F.3d 162, 164 (2d Cir. 1998).

As described in the Certification and Loss Chart attached to the Declaration of Kim Miller in Support of Amir Konigsberg's Motion for Appointment as Lead Plaintiff and for Approval of Selection of Lead Counsel ("Miller Decl.") (Exhibits A & B), Mr. Konigsberg suffered losses of approximately $79,004.60 from his purchases of 24,565 Zeta Global Holdings Corp. ("Zeta" or the "Company") securities from February 27, 2024 through November 13, 2024, inclusive. He also retained 9,600 shares through the end of the Class Period.

To the best of his knowledge, this represents the largest financial interest of any investor seeking to be appointed lead plaintiff. In addition, Mr. Konigsberg's Certification and Declaration demonstrate his awareness of the fiduciary duties associated with serving as a lead plaintiff. *See* Miller Decl., Ex's. A & C. Mr. Konigsberg also satisfies the applicable typicality and adequacy requirements of Rule 23. Accordingly, Mr. Konigsberg seeks an order: (i) appointing him as Lead Plaintiff in this action pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act; and (ii) approving his selection of KSF as Lead Counsel for the putative class.

## II.      PROCEDURAL BACKGROUND

The above-captioned securities lawsuit was filed in this District on November 22, 2024 and alleges violations of §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a),

and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder.[1] The Action brings claims "on behalf of persons and entities that purchased or otherwise acquired Zeta securities between February 27, 2024 and November 13, 2024, inclusive (the 'Class Period')." ECF No. 1, ¶ 1. Notice of the Action was published in *Business Wire* on November 22, 2024 informing investors who wished to serve as lead plaintiff that they must move the Court within 60 days of publication.[2] ECF No. 15.

## III.    STATEMENT OF FACTS

Zeta Global Holdings Corp. ("Zeta" or the "Company") is a marketing technology company which purports to "offer one of the largest proprietary data sets in the U.S." composed of "an amalgamation of [] private proprietary data, publicly available data and data provided by [a] partner ecosystem." ECF No. 1, ¶¶ 2, 16. Zeta operates a cloud-based platform for marketers to identify and target potential consumers across multiple digital channels. *Id.* at ¶ 16. As of December 31, 2023, the Company's data set allegedly "contain[ed] more than 240 million opted-in individuals in the U.S. and more than 535 million opted-in individuals globally with an average of more than 2,500 attributes per individual, which may be demographic, behavioral, psychographic, transactional, or indicative of preference." *Id.* Defendant David A. Steinberg ("Steinberg") was the Company's Chief Executive Officer ("CEO") at all relevant times. *Id.* at ¶ 13. Defendant Christopher Greiner ("Greiner") was the Company's Chief Financial Officer ("CFO") at all relevant times. *Id.* at ¶ 14.

---

[1]    All emphasis is added and internal citations are omitted unless otherwise indicated. Capitalized terms have the same meaning as in the *Davoodi* Complaint, unless otherwise stated.

[2]    *Business Wire* is a widely circulated, national business-oriented wire service, which courts in this District have routinely found adequate to advise prospective class members of their right to seek appointment as lead plaintiff in a securities class action such as this one. *See* § IV.A.1, *infra*.

The Class Period begins on February 27, 2024, when Zeta issued a press release announcing its financial results for the fiscal year and quarter ended December 31, 2023. *Id.* at ¶ 17. The press release touted the Company's "Fourth Consecutive Year of 20%+ Revenue Growth in 2023." *Id.* The press release also stated, among other things, that the Company had "[a]djusted EBITDA1 of $129.4 million, an increase of 40% compared to $92.2 million in 2022." *Id.*

On February 28, 2024, the Company submitted its annual report for the fiscal year ended December 31, 2023 on a Form 10-K filed with the SEC, affirming the previously reported financial results (the "2023 10-K"). *Id.* at ¶ 18. The 2023 10-K also described the Company's purported revenue recognition policies and procedures as well as the purported value of its contract assets and vendor agreements. *Id.* Specifically, the 2023 10-K stated, in relevant part: "Revenue arises primarily from our technology platform via subscription fees, volume-based utilization fees and fees for professional services designed to increase our customers' usage of our technology platform." *Id.* The 10-K further stated:

> We have certain revenue contracts with our vendors that involve both the purchase and sale of services with a single counterparty. We perform an assessment of the services transferred to determine the independent nature of both the transactions and accordingly revenue and expense are based on the fair value of the services provided or received.

*Id.* The 2023 10-K also described Zeta's sales, product, and data collection policies, claiming that the Company has "the industry's largest opted-in data set for omnichannel marketing," allegedly composed of "more than 240 million opted-in individuals in the U.S. and more than 535 million opted-in individuals globally." *Id.* at ¶ 19. The 2023 10-K further stated that the "Zeta Marketing Platform, or ZMP, is the largest omnichannel marketing platform with identity data at its core." *Id.* And regarding customer trust, the 2023 10-K stated:

> We have also dedicated significant resources to the goal of building customer trust by developing and implementing programs designed to protect data privacy and to promote a secure technical environment. The resources we dedicated to this goal

3

include engineers, analysts, lawyers, policy experts and operations specialists, as well as hardware and software from leading vendors and solutions we have designed and built. In particular, we have implemented a number of technical innovations, process enhancements and industry solutions in response to our increased obligations with respect to our data. For example, we can identify and implement user consent parameters and opt-in or opt-out as applicable and can evaluate whether such consents apply to our various data sources, products or customers.

*Id.*

On May 6, 2024, Zeta issued a press release announcing its financial results for the quarter ended March 31, 2024, touting the Company's "Accelerating Growth" including "revenue of $195M, an increase of 24% Y/Y." *Id.* at ¶ 20. The press release also announced that the company was "[r]aising guidance for each quarter of 2024 with the full year revenue growth rate expected to accelerate[.]" *Id.* The press release further stated that the Company had "[a]djusted EBITDA of $30.5 million, increased 27% Y/Y compared to $24.0 million in 1Q'23." *Id.* Then on May 7, 2024, the Company filed with the SEC its quarterly report for the period ended March 31, 2024 on a Form 10-Q, affirming its previously announced financial results and largely echoing the description of its purported revenue recognition policies and procedures as well as the purported value of its contract assets and vendor agreements in the 2023 10-K. *Id.* at ¶¶ 20-21.

On July 31, 2024, Zeta issued a press release announcing its financial results for the quarter ended June 30, 2024, touting the Company's "Accelerate[d] Revenue Growth" including "record quarterly revenue of $228M, up 33% Y/Y." *Id.* at ¶ 22. The press release also stated, among other things, that the Company had "[a]djusted EBITDA 1 of $38.5 million, increased 44% Y/Y compared to $26.8 million in 2Q'23." *Id.* Then on August 1, 2024, the Company filed with the SEC its quarterly report for the period ended June 30, 2024 on a Form 10-Q, in which it affirmed the previously reported financial results and again echoed similar assurances about its purported

revenue recognition policies and procedures as well as the purported value of its contract assets and vendor agreements. *Id.* at ¶ 23.

On November 11, 2024, Zeta issued a press release announcing its financial results for the quarter ended September 30, 2024, announcing the Company's "accelerate[d] Revenue Growth to 42%" and "record revenue of $268M, an increase of 42% Y/Y." *Id.* at ¶ 24. The press release also stated that the Company was "[r]aising 4Q24 revenue growth guidance to 40% Y/Y[.]" *Id.* And it stated that the Company had "[a]djusted EBITDA 1 of $53.6 million, increased 59% Y/Y compared to $33.7 million in 3Q'23." *Id.* The 10-Q issued the following day affirmed these financial results and again repeated similar assurances concerning the Company's purported revenue recognition policies and procedures as well as the purported value of its contract assets and vendor agreements. *Id.* at ¶ 25.

On November 13, 2024, market research group Culper Research published a report entitled "Zeta Global Holdings Corp (ZETA): Shams, Scams, and Spam[]" (the "Culper Report"), calling into question the "integrity of the Company's data collection and reported financials[.]" *Id.* at ¶ 27. The Culper Report alleged that "Zeta has formed 'two-way' contracts with third party consent farms wherein the Company simultaneously acts as both a supplier and a buyer of consumer data" allowing the Company to "flatter reported revenue growth" and indicating possible "roundtripping" of revenue. *Id.* The Culper Report stated that Zeta collects the majority of its customer data from a network of "sham websites that hoodwink millions of consumers each month into handing their data over to Zeta under false pretenses." *Id.* Such websites include fake job boards, which trick individuals to submit personal data under the guise of submitting a job application. *Id.* The Culper Report further alleged that the Company's "most valuable data" comes from these predatory websites, dubbed consent farms, which are "responsible for almost the

entirety of the Company's growth." *Id.* The Culper Report provided multiple examples of specific websites used as consent farms. *Id.* at ¶ 28.

On this news, the Company's stock price fell $10.46, or 37.07%, to close at $17.76 per share on November 13, 2024, on unusually heavy trading volume. *Id.* at ¶ 29.

## IV.    ARGUMENT

### a.    Mr. Konigsberg Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure to appoint a lead plaintiff in a securities fraud class action. 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i). First, the plaintiff who files the initial action must publish a notice within 20 days of filing the action advising the class of his right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Here, notice of this Action was published on November 22, 2024 via *Business Wire*. *See* ECF No. 15.

Next, within 60 days of publication, members of the proposed class are entitled to seek appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)-(B). The Court then appoints as lead plaintiff the member of the class that is determined to be "most capable" of adequately representing the interest of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> > (aa)    has either filed the complaint or made a motion in response to a notice . . .;
> >
> > (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). Once the presumption attaches, it can only be overcome upon a showing of proof that the presumptive lead plaintiff will not fairly and adequately represent the

class or is subject to unique defenses that will render the presumptive lead plaintiff incapable of doing so. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### 1. Mr. Konigsberg's Motion is Timely

The first-filed plaintiff published notice pursuant to the PSLRA on November 22, 2024 *via Business Wire*. *See* ECF No. 15. *Business Wire* is a widely circulated national business-oriented wire service which courts in this District routinely find to satisfy the PSLRA's statutory notice requirements. *See Moore v. Checkpoint Therapeutics, Inc.*, 2024 U.S. Dist. LEXIS 111014, at *2 (S.D.N.Y. 2024) (noting that the notice required by the PSLRA was published in *Business Wire*); *Burnham v. Qutoutiao Inc.*, 2020 U.S. Dist. LEXIS 206752, at *3 (S.D.N.Y. 2020) (same).

### 2. Mr. Konigsberg Possesses the Largest Financial Interest in the Relief Sought by the Class

Mr. Konigsberg has the largest financial interest in the relief sought by the putative class – a loss of approximately $79,004.60 – in connection with his purchase of 24,565 Zeta shares during the Class Period. *See* Miller Decl., Ex. B; *Wiggins*, 158 F.3d at 164.

### 3. Mr. Konigsberg Satisfies the Requirements of Rule 23

"Within ninety days after publication of notice, the PSLRA provides that the Court shall consider any motion made by a purported class member and shall appoint as lead plaintiff the 'member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interest of class members.'" *Carpenter v. Oscar Health, Inc.*, 631 F. Supp. 3d 157, 160 (S.D.N.Y. 2022) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)). With respect to the qualifications of lead plaintiffs, Rule 23(a) generally requires that their claims be typical of the claims of the class and that the representatives will fairly and adequately protect the interest of the class. *See* FED. R. CIV. P. 23. As detailed below, Mr. Konigsberg satisfies the typicality and adequacy requirements of Rule 23(a).

The typicality requirement of Rule 23(a)(3) is satisfied when a representative plaintiff's claims are "based on the same legal theory . . . and arise from the same events and course of conduct . . . as the prospective class's claims." *Hoare v. Oddity Tech. Ltd.*, 2024 U.S. Dist. LEXIS 220596, at *9 (S.D.N.Y. 2024) (citations omitted). Mr. Konigsberg's claims are typical of those of other putative class members. *Id.* Like other putative class members, Mr. Konigsberg: (i) purchased or otherwise acquired Zeta securities during the class period; (ii) did so in reliance upon the allegedly materially false and misleading statements issued by Defendants; and (iii) suffered damages from purchasing artificially inflated securities and then suffered harm when the truth was revealed. *See* Miller Decl., Ex.'s. A, B, & C.

A representative party must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *see Jaar v. N. Genesis Acquisition Corp.*, 2024 U.S. Dist. LEXIS 116975, at *4 (S.D.N.Y. 2024). Mr. Konigsberg's interests are clearly aligned with the members of the class and there is no antagonism between his interests and those of other class members. Mr. Konigsberg, a resident of Tel Aviv, Israel, has spent many years investing in capital markets and has amply demonstrated his adequacy as a potential class representative by signing a sworn certification and declaration affirming his willingness to serve, and assume the fiduciary responsibilities of serving, as lead plaintiff. *See* Miller Decl., Ex. A (certification); Ex. C (Amir Konigsberg's Declaration at ¶ 5). In addition, Mr. Konigsberg has selected counsel highly experienced in prosecuting securities class actions as proposed lead counsel. Miller Decl., Ex. D.

**b.    The Court Should Approve Mr. Konigsberg's Selection of Lead Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Jaar*,

8

2024 U.S. Dist. LEXIS 116975, at *8 (quotations omitted). Here, Mr. Konigsberg has selected KSF as Lead Counsel for the class following his own independent assessment of the firm's qualifications. *See* Miller Decl., Ex. C at ¶¶ 7-8.

KSF is a national law firm with offices in Louisiana, California, New Jersey, Illinois and New York—courts have repeatedly found KSF well-qualified to serve as Lead Counsel in securities class actions such as this. *See* Miller Decl. Ex. D; *Bangzheng Chen v. CytRx Corp.*, 2014 U.S. Dist. LEXIS 194696, at *9 (C.D. Cal. 2014) ("Based on the firm's résumé and experience with class action securities litigation, the Court is satisfied that Kahn, Swick & Foti, LLC is qualified to serve as lead counsel in this case."); *Dougherty v. Esperion Therapeutics*, 2020 U.S. Dist. LEXIS 216515, at *22-23 (E.D. Mich. 2020) (approving KSF as co-lead and co-class counsel); *Kasper v. AAC Holdings, Inc.*, 2017 U.S. Dist. LEXIS 109608, at *42-43 (M.D. Tenn. 2017) (same); *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2020 U.S. Dist. LEXIS 49786, at *29 (S.D.N.Y. 2020) (approving KSF as lead counsel).

KSF prevailed on behalf of the court-appointed lead plaintiff in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), *cert. denied sub nom.* 139 S. Ct. 2615 (2019), which significantly altered the federal securities pleading requirements and civil pleading practice generally in the Ninth Circuit. *See* Miller Decl. Ex. D. KSF also served as counsel to the lead plaintiff in the *Halliburton* securities litigation matter, where lead plaintiff twice prevailed before the United States Supreme Court and ultimately obtained a $100 million recovery for the class. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011). More recently, KSF obtained a $165 million recovery for Blackberry investors, following nearly nine years of determined litigation including a successful appeal of an initial dismissal, large scale discovery, and substantially defeating defendants' motion

for summary judgment. *See Pearlstein v. Blackberry Ltd.*, 2022 U.S. Dist. LEXIS 177786, at *26-27 (S.D.N.Y. 2022). And last year, KSF, along with its co-counsel, obtained a $189 million settlement of a securities class action on behalf of investors in TuSimple Holdings, Inc., a record-breaking settlement in the Southern District of California. *See Dicker v. TuSimple Holdings, Inc. et al.*, No. 3:22-cv-01300, ECF No. 246 (S.D. Cal. Dec. 19, 2024).[3] Thus, the Court may be assured that in the event this Motion is granted, the members of the class will receive the highest caliber legal representation available from KSF. *See* Miller Decl. Ex. D.

## V.    CONCLUSION

For all of the foregoing reasons, Mr. Konigsberg respectfully requests that this Court appoint him to serve as Lead Plaintiff in this action and approve his selection of KSF as Lead Counsel for the Class.

DATED: January 21, 2025

Respectfully submitted,

**KAHN SWICK & FOTI, LLC**

By:_____*s/ Kim Miller*_____
Kim Miller (KM6996)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3732
kim.miller@ksfcounsel.com

-and-

Ramzi Abadou
(*pro hac vice to be submitted*)
**KAHN SWICK & FOTI, LLP**
580 California Street, Suite 1200

---

[3]    The $165 million recovery in *Blackberry* was the fourth largest in the United States in 2022. *See* Institutional Shareholder Services, ISSGOVERNANCE.COM, *The Largest Class Action Settlements of 2022* (Jan. 3, 2023) https://insights.issgovernance.com/posts/the-largest-class-action-settlements-of-2022. The $189 million recovery in *TuSimple* was the seventh largest securities fraud settlement in the United States in 2024. *See* DUANE MORRIS CLASS ACTION REVIEW 2025 397 (Gerald L. Maatman, Jr. & Jennifer A. Riley, 2025)

San Francisco, California 94104
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

-and-

Lewis S. Kahn
(*pro hac vice to be submitted*)
James T. Fetter
(*pro hac vice to be submitted)*
Alexandra Pratt
(*pro hac vice to be submitted)*
**KAHN SWICK & FOTI, LLC**
1100 Poydras Street, Suite 960
New Orleans, Louisiana 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com
james.fetter@ksfcounsel.com
alexandra.pratt@ksfcounsel.com

*Counsel for Movant* <CLIENT

11

**<u>CERTIFICATE OF SERVICE</u>**

On January 21, 2025 the foregoing document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*s/ Kim Miller*
Kim Miller
