**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ARMIN DAVOODI, Individually and
on Behalf of All Others Similarly Situated,

                Plaintiff,

       vs.

ZETA GLOBAL HOLDINGS CORP., DAVID
A. STEINBERG, and CHRISTOPHER
GREINER,

              Defendants.

**Case No. 1:24-cv-8961-DEH**

---

**AMIR KONIGSBERG'S OPPOSITION TO ALL OTHER MOTIONS**
**FOR APPOINTMENT AS LEAD PLAINTIFF**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     ARGUMENT .............................................................................................................. 3

        A.      Legal Standards ............................................................................................... 3

        B.      The Dart Trust is Subject to Unique Defenses Rendering it Inadequate to Serve as
                Lead Plaintiff .................................................................................................. 4

                1.      The Dart Trust's Filing is Untimely ....................................................... 4

                2.      The Dart Trust Lacks Standing to Represent the Class .......................... 5

                3.      The Court Should Hold an Evidentiary Hearing .................................... 10

        C.      Mr. Konigsberg is the "Most Adequate Plaintiff" ......................................... 12

III.    CONCLUSION ......................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997) ...................................................................................... 6

*Andrade v. Am. Apparel, Inc.*,
2011 U.S. Dist. LEXIS 79795 (C.D. Cal. 2011) ..................................................... 10

*Bangzheng Chen v. CytRx Corp.*,
2014 U.S. Dist. LEXIS 194696 (C.D. Cal. 2014) ................................................... 14

*Batter v. Hecla Mining Co.*,
2020 U.S. Dist. LEXIS 51665 (S.D.N.Y. 2020) ....................................................... 5

*Baydale v. Am. Exp. Co.*,
2009 U.S. Dist. LEXIS 71668 (S.D.N.Y. 2009) ....................................................... 9

*Camp v. Qualcomm Inc.*,
2019 U.S. Dist. LEXIS 10269 (S.D. Cal. 2019) ..................................................... 11

*Chem. Bank v. Shearson Lehman Bros.*,
1992 U.S. Dist. LEXIS 10751 (S.D.N.Y. 1992) ....................................................... 7

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*,
790 F.3d 411 (2d Cir. 2015) ................................................................................. 6-7

*Gronich v. Omega Healthcare Inv'rs., Inc.*,
2018 U.S. Dist. LEXIS 51934 (S.D.N.Y. 2018) ..................................................... 12

*Gross v. AT&T Inc.*,
2019 U.S. Dist. LEXIS 225777 (S.D.N.Y. 2019) ............................................ 2, 7, 11

*Gross v. AT&T Inc.*,
2019 U.S. Dist. LEXIS 128615 (S.D.N.Y. 2019) .................................................. 2, 8

*In re Able Lab'ys Sec. Litig.*,
425 F. Supp. 2d 562 (D.N.J. 2006) ......................................................................... 4

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
2004 U.S. Dist. LEXIS 10200 (E.D. Pa. 2004) ..................................................... 12

*In re Bard Assocs., Inc.*,
2009 U.S. App. LEXIS 26289 (10th Cir. 2009) ...................................................... 6

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ......................................................................... 10, 11-12

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
2020 U.S. Dist. LEXIS 49786 (S.D.N.Y. 2020) ..................................................... 14

*In re eSpeed, Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2005) ........................................................................ 7

*In re Healthsouth Corp. Sec. Litig.*,
    213 F.R.D. 447 (N.D. Ala. 2003) ................................................................... 9

*In re Hebron Tech. Co. Sec. Litig.*,
    2020 U.S. Dist. LEXIS 169480 (S.D.N.Y. 2020)......................................... 3, 4

*In re Herley Indus. Sec. Litig.*,
    2009 U.S. Dist. LEXIS 91600 (E.D. Pa. 2009) ............................................ 6

*In re Imax Sec. Litig.*,
    2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. 2009) ......................................... 2, 9

*In re Level 3 Communs., Inc. Secs. Litig.*,
    2009 U.S. Dist. LEXIS 44706 (D. Colo. 2009) ........................................... 4

*In re Network Assocs. Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ......................................................... 11

*In re Paysafe Ltd.*,
    2024 U.S. Dist. LEXIS 69230 (S.D.N.Y. 2024) ......................................... 5

*In re Telxon Corp. Sec. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999) ...................................................... 4, 12

*In re The Reserve Fund Sec. and Derivative Litig.*,
    No. 09 MD 2011 (S.D.N.Y. Aug. 5, 2009) ................................................. 10

*Khoja v. Orexigen Therapeutics*,
    2021 U.S. Dist. LEXIS 230105 (S.D. Cal. 2021) ....................................... 14

*McCormack v. Dingdong (Cayman) Ltd.*,
    2023 U.S. Dist. LEXIS 95871 (S.D.N.Y. 2023) ...................................... 12-13

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ....................................................................................... 5

*Micholle v. Ophthotech Corp.*,
    2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. 2018) ......................................... 13

*Nasin v. Hongli Clean Energy Techs. Corp.*,
    2017 U.S. Dist. LEXIS 192673 (D.N.J. 2017) ......................................... 2-3, 5

*Okla. Law Enf't Ret. Sys. v. Adeptus Health Inc.*,
    2017 U.S. Dist. LEXIS 140268 (E.D. Tex. 2017) ..................................... 4-5

*Pearlstein v. Blackberry Ltd.*,
    2022 U.S. Dist. LEXIS 177786 (S.D.N.Y. 2022) ....................................... 14

iii

*Perez v. Hexo Corp.*,
2020 U.S. Dist. LEXIS 32381 (S.D.N.Y. 2020) ............................................................ 10-11

*Petrie v. Elec. Game Card, Inc.*,
308 F.R.D. 336 (C.D. Cal. 2015) ...................................................................................... 7

*Pinks v. M&T Bank Corp.*,
2017 U.S. Dist. LEXIS 50892 (S.D.N.Y. 2017) ............................................................... 2

*Plymouth Cty. Ret. Ass'n v. Innovative Tech., Inc.*,
2021 U.S. Dist. LEXIS 180029 (S.D.N.Y. 2021) ........................................................ 6, 10

*Reitan v. China Mobile Games & Ent. Grp., Ltd*,
68 F. Supp. 3d 390 (S.D.N.Y. 2014) ................................................................................ 4

*Rocco v. Nam Tai Elecs., Inc.*,
245 F.R.D. 131, 145 (S.D.N.Y. 2007) ............................................................................. 4

*Rodriguez v. Draftkings Inc.*,
2021 U.S. Dist. LEXIS 219489 (S.D.N.Y. 2021) ............................................................ 3

*Rozenboom v. Van Der Moolen Holding, N.V.*,
2004 U.S. Dist. LEXIS 6382 (S.D.N.Y. 2004) ................................................................ 4

*Sakhrani v. Brightpoint, Inc.*,
78 F. Supp. 2d 845 (S.D. Ind. 1999) ......................................................................... 11-12

*Schaffer v. Horizon Pharm. Pub. Ltd. Co.*,
2016 U.S. Dist. LEXIS 83175 (S.D.N.Y. 2016) ........................................................... 8-9

*Scott v. N.Y. City Dist. Council of Carpenters Pension Plan*,
224 F.R.D. 353 (S.D.N.Y. 2004) ..................................................................................... 1

*Seidel v. Noah Educ. Holdings, Ltd.*,
2009 U.S. Dist. LEXIS 25949 (S.D.N.Y. 2009) ............................................................. 7

*Skwortz v. Crayfish Co.*,
2001 U.S. Dist. LEXIS 15532 (S.D.N.Y. 2001) ........................................................... 2, 4

*Switzenbaum v. Orbital Scis. Corp.*,
187 F.R.D. 246 (E.D. Va. 1999) ...................................................................................... 5

*Titus v. Wallick*,
306 U.S. 282, 289 (1939) ................................................................................................. 6

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008) ........................................................................... 13

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008) ................................................................................. *passim*

v

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................... 1, 3, 10

**Rules**

FED. R. CIV. P. 23 ................................................................................................... 1, 3,  12, 13

## I.   INTRODUCTION

On January 21, 2025, Amir Konigsberg and seven other movants filed motions seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1] The PSLRA provides that "the most adequate plaintiff" is the person who has the greatest financial stake in the outcome of the case *and* also meets the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").[2] While the Dart Trust ("Dart Trust" or "Trust") claims a larger loss than Mr. Konigsberg, its motion for appointment as lead plaintiff should be denied as its motion raises more questions than it answers. *See* ECF No. 30. As set forth herein, only Mr. Konigsberg satisfies the PSLRA's requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

First, the Dart Trust should not be appointed lead plaintiff because it is subject to a unique standing defense which precludes the *prima facie* finding of adequacy mandated by the PSLRA. *See Scott v. N.Y. City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 357 (S.D.N.Y. 2004) (finding that "a defense unique to a named plaintiff" "can bar a finding of adequacy even if that defense would not ultimately defeat that particular class representative's claim"). This is so because the Second Circuit holds that a third party (like the Dart Trust here) must be assigned a property interest in the claims at issue to have standing. *See W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) ("[T]he minimum requirement for injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim."). Here, the Trust has

---

[1]     Four motions for appointment as lead plaintiff remain pending—Amir Konigsberg, the Dart Trust, the Allegheny County Employees' Retirement System, and Scott Vanderbosch. Movant Olga Kunitskaya filed a notice of non-opposition to competing lead plaintiff motions on January 24, 2025. *See* ECF No. 44. Movants Boris Khvostichenko and Robert E. Sheehan, Jr. filed notices of non-opposition on January 31, 2025. *See* ECF Nos. 46-47. Movant Eric Stephanson filed a notice of non-opposition on February 4, 2025. *See* ECF No. 48.

[2]     All emphasis added and internal citations are omitted unless otherwise indicated. Capitalized terms have the same meaning as in the *Davoodi* Complaint, unless otherwise stated.

1

not submitted **any** competent evidence of its standing to represent the class. *See Gross v. AT&T Inc.*, 2019 U.S. Dist. LEXIS 225777, at *5-6 (S.D.N.Y. 2019), adhered to on recons. by *Gross v. AT&T Inc.*, 2019 U.S. Dist. LEXIS 128615, at *9-10 (S.D.N.Y. 2019) (finding a lead plaintiff movant inadequate because it had not established standing and was therefore subject to a unique defense).

Indeed, the Dart Trust's untimely "Limited Power of Attorney" lacks any assignment of interest to confer Mr. Dardi with Article III standing to pursue these claims as lead plaintiff in the Trust's (or his wife's) name. *See id.* (holding that a mere power-of-attorney is insufficient to confer standing). The Trust's lack of standing creates a serious risk that the Dart Trust, were it appointed here, will be subject to unique standing defenses that Defendants will later raise to the detriment of the class. *See In re Imax Sec. Litig.*, 2009 U.S. Dist. LEXIS 58219, at *11 (S.D.N.Y. 2009) (removing lead plaintiff due to standing issue afflicting Dart Trust here); *see also Pinks v. M&T Bank Corp.*, 2017 U.S. Dist. LEXIS 50892, at *9 (S.D.N.Y. 2017) (class certification denied partially based on a lack of Article III standing).

And the "Limited Power of Attorney" attached to the Dart Trust's January 27, 2025, declaration is in any event untimely under the PSLRA's strict 60-day time limit for lead plaintiff motions. *See Skwortz v. Crayfish Co.*, 2001 U.S. Dist. LEXIS 15532, at *16 (S.D.N.Y. 2001) ("The 60 day period the statute provides for the submission of lead counsel motions is mandatory.") (cleaned up). The Dart Trust did not file its corrected declaration until almost a week after the PSLRA's strict jurisdictional deadline and just six business days before the February 4, 2025 deadline to file any opposition to motions for appointment of lead plaintiff. *See Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 U.S. Dist. LEXIS 192673, at *9 (D.N.J. 2017) (lack of required document with initial lead plaintiff motion rendered applicant not the "presumptively most

2

adequate lead plaintiff"). Therefore, the Dart Trust is not an adequate representative of the class and should not be appointed to serve as lead plaintiff.

Mr. Konigsberg is the only remaining movant before the Court that satisfies all of the necessary elements for appointment under the PSLRA. He alone is "most capable of adequately representing the class." *See* 15 U.S.C. § 78u4(a)(3)(B)(iii)(I). With losses of approximately $79,004.60 in connection with his Class Period transactions in Zeta securities, Mr. Konigsberg possesses the largest financial interest of any movant that also satisfies the adequacy and typicality requirements of Rule 23. *See*, *generally*, ECF No. 36. Accordingly, Mr. Konigsberg respectfully requests that the Court grant his Motion and deny all other motions.

## II.    ARGUMENT

### A.    Legal Standards

The PSLRA provides a presumption that the lead plaintiff is the person that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption, however, can be rebutted by a showing that the presumptive lead plaintiff is subject to unique defenses that render them incapable of adequately representing the class. *See Rodriguez v. Draftkings Inc.*, 2021 U.S. Dist. LEXIS 219489, at *26 (S.D.N.Y. 2021); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).

"Before disqualifying a potential lead plaintiff on [the basis that he is subject to a unique defense], the Court need not conclude that the defense is likely to or will succeed." *In re Hebron Tech. Co. Sec. Litig.*, 2020 U.S. Dist. LEXIS 169480, at *17 (S.D.N.Y. 2020). "Rather, it must only find 'at least a potential that the presumptively most adequate lead plaintiff will be subject to unique defenses.'" *Id*. "This approach protects members of the putative class, because even ultimately unsuccessful unique defenses may 'divert attention from the substance of the basic

3

claim,' and class members are 'entitled to be represented by someone unhindered by' such distractions." *Id.* (quoting *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 145 (S.D.N.Y. 2007)).

### B. The Dart Trust is Subject to Unique Defenses Rendering it Inadequate to Serve as Lead Plaintiff

#### 1. The Dart Trust's Filing is Untimely

Here, consistent with the PSLRA, the Court set January 21, 2024 as the deadline for members of the putative class to move the Court to serve as lead plaintiffs. *See* ECF No. 16. "The PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action." *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999). This requirement includes filing all required materials in support of a lead plaintiff motion in a timely manner. *See In re Able Lab'ys Sec. Litig.*, 425 F. Supp. 2d 562, 565-66 (D.N.J. 2006) (refusing to consider a movant's revised certification alleging a larger financial loss after the 60-day deadline had passed); *see also In re Level 3 Communs., Inc. Secs. Litig.*, 2009 U.S. Dist. LEXIS 44706, at *14 (D. Colo. 2009) ("Only at the final stage of briefing did the Level 3 Plaintiffs Group submit a joint declaration.").

The Dart Trust's belated attempt to amend the Declaration of Mirko Dardi (ECF No. 45-2) should be found untimely due to the PSLRA's strict 60-day time limitation. *See Skwortz*, 2001 U.S. Dist. LEXIS 15532, at *16 ("The 60-day period the statute provides for the submission of lead counsel motions is mandatory."); *Reitan v. China Mobile Games & Ent. Grp., Ltd*, 68 F. Supp. 3d 390, 397 (S.D.N.Y. 2014) (same); *Rozenboom v. Van Der Moolen Holding, N.V.*, 2004 U.S. Dist. LEXIS 6382, at *13 n.4 (S.D.N.Y. 2004) (stating that several courts have declined to allow movants "to supplement their motions to enhance their loss after expiration of the sixty-day period."); *Okla. Law Enf't Ret. Sys. v. Adeptus Health Inc.*, 2017 U.S. Dist. LEXIS 140268, at *13

(E.D. Tex. 2017) ("[C]ompliance with the procedural requirements of the PSLRA is mandatory and should be strictly enforced.").

The Dart Trust waited almost a full week after this deadline—only six business days before the Court's deadline for opposition to the lead plaintiff motions—to try to belatedly amend the defective Dardi Declaration. *See* ECF No. 45 (Jan. 27, 2025); *Nasin*, 2017 U.S. Dist. LEXIS 192673, at *9 (finding where movant failed to include a required certification with its initial timely motion, movant was not the "presumptively most adequate lead plaintiff"); *Switzenbaum v. Orbital Scis. Corp.*, 187 F.R.D. 246, 249-50 (E.D. Va. 1999) (ruling that a plaintiff, who movant attempted to add after sixty-day period, could neither be considered individually nor as part of the movant group that had filed a timely motion).

Even if the Court were to consider it, the Court should weigh the Trust's lack of attention to detail and the increased likelihood that the Trust will be subject to an untimeliness defense against it. *See In re Paysafe Ltd.*, 2024 U.S. Dist. LEXIS 69230, at *19-21 (S.D.N.Y. 2024) (collecting cases holding that a potential lead plaintiff should be disqualified if its standing could be challenged, whether or not such challenges would ultimately succeed); *Batter v. Hecla Mining Co.*, 2020 U.S. Dist. LEXIS 51665, at *22 (S.D.N.Y. 2020) ("[T]he proof needed to rebut the presumption need not establish a plaintiff's inadequacy with absolute certainty; instead it is enough that it presents a colorable risk of inadequacy.")(quotations omitted).

Even if the Court does consider the Dart Trust's untimely declaration, it does nothing to demonstrate its standing to assert claims on behalf of the putative class.

### 2.    The Dart Trust Lacks Standing to Represent the Class

A plaintiff must adequately establish that it has personally suffered an injury in fact that is fairly traceable to a defendant's alleged misconduct and is likely to be redressed by a decision in the plaintiff's favor to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Indeed, courts recognize that "the minimum requirement for injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim" *Huff*, 549 F.3d at 108. Because standing is a threshold issue, courts regularly consider whether a movant (*i.e.* the Dart Trust) possesses standing to sue at the lead plaintiff stage of the proceedings. *See, e.g., In re Herley Indus. Sec. Litig.*, 2009 U.S. Dist. LEXIS 91600 (E.D. Pa. 2009) (finding *Huff* persuasive and applying its reasoning at the lead plaintiff stage); *see also In re Bard Assocs., Inc.*, 2009 U.S. App. LEXIS 26289, at *8-9 (10th Cir. 2009) (affirming the district court's adoption of "a bright line rule requiring lead plaintiff movants to establish Article III standing by the time the lead plaintiff motions are due"); *Plymouth Cty. Ret. Ass'n v. Innovative Tech., Inc.*, 2021 U.S. Dist. LEXIS 180029, at *11 (S.D.N.Y. 2021) ("Article III standing must be present when the litigation commences.").

For an assignment of legal title to be valid, "the owner must manifest 'an intention to make the assignee the owner of [the] claim.'" *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997) (alteration in original). Second Circuit precedent explains that a mere power of attorney, as opposed to an assignment, does not confer Article III standing sufficient to enable the attorney in fact to bring suit in the attorney in fact's name:

> [Supreme Court precedent] . . . implicitly supports the holding of *Advanced Magnetics* that a ***mere power-of-attorney***—*i.e.*, an instrument that authorizes the grantee to act as an agent or an attorney-in-fact for the grantor . . . ***does not confer standing to sue in the holder's own right because a power-of-attorney does not transfer an ownership interest in the claim***. By contrast, an assignment of claims confers legal title or ownership of those claims and thus fulfills the constitutional requirement of an "injury-in-fact."

*Huff,* 549 F.3d at 108 (emphasis added); *see, e.g., Advanced Magnetics*, 106 F.3d at 17-18 ("The grant of a power of attorney . . . is not the equivalent of an assignment of ownership; and, standing alone . . . does not enable the grantee to bring suit in his own name.") (citing *Titus v. Wallick*, 306 U.S. 282, 289 (1939)); *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 420 (2d Cir. 2015) ("Our caselaw confirms that a purported assignee of a claim must plead a proprietary

6

interest in that claim, and not simply the ability to pursue the claim on behalf of another . . . .").

And, to that end, courts have rejected movants as lead plaintiffs (like the Dart Trust here) who

have failed to establish a property interest in the claims with proof of their standing to serve as

lead plaintiff. *See Gross*, 2019 U.S. Dist. LEXIS 225777, at *5 (rejecting a lead plaintiff movant

because it had not established standing and was therefore subject to a unique defense.).

In fact, while the Dart Trust's *trustee* (Fronzuance Tiseli) may have had standing to file a

lead plaintiff motion seeking to serve as lead plaintiff on the Trust's behalf, the Trust itself lacked

and lacks standing to do so, as it did here, in its own name. *See Seidel v. Noah Educ. Holdings,

Ltd.*, 2009 U.S. Dist. LEXIS 25949, at *8-10 (S.D.N.Y. 2009); *see also Chem. Bank v. Shearson

Lehman Bros.*, 1992 U.S. Dist. LEXIS 10751, at *2 (S.D.N.Y. 1992) ("A Trustee of a trust is the

legal owner of the Trust's assets and has standing to bring an action to recover losses sustained by

the trust as a result of the wrongful and fraudulent actions of a defendant."). The "Limited Power

of Attorney" the Dart Trust submitted (ECF No. 45-2, at 4), which is not an assignment as required

under *Huff*, does nothing to remedy this standing defect.

Specifically, the Dart Trust's untimely "Limited Power of Attorney" "does not confer

standing to sue in the holder's [*i.e.*, Mr. Dardi and his wife's] own right because a power-of-

attorney does not confer an ownership interest in the [Trust's] claim." *Huff,* 549 F.3d at 108. Even

under pre-*Huff* caselaw in this District, he has not provided *any* competent assignment of

ownership in the Trust *or his wife's claims* sufficient to demonstrate Mr. Dardi's standing. *See In

re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 98 (S.D.N.Y. 2005) (husband who acts as investment

advisor for wife must demonstrate standing) (Scheindlin, J.); *Petrie v. Elec. Game Card, Inc.*, 308

F.R.D. 336, 346 (C.D. Cal. 2015). Ultimately, the "Limited Power of Attorney" does not state that

7

Ms. Tiseli, the trustee, conferred Mr. Dardi with legal title or an ownership interest in the Trust's claims in this case. *See* ECF No. 45-2, at 4. End of story.

To that end, the Trust's "Limited Power of Attorney" is almost identical to the agency relationship in *Huff* where Huff's clients did not transfer title to their claims to Huff. *See Huff*, 549 F.3d at 109. Instead, Huff argued that it was "empowered by powers of attorney" to bring a lawsuit "in its representative capacity." *Id.* The Second Circuit held that the power of attorney did not confer a legal title to the claims Huff brought, reasoning that though Huff enjoyed "the authority to make some decisions concerning litigation, it [did] not have an ownership stake in any claims its clients might pursue against defendants." *Id.*

Similarly, here, the Trust's trustee appears to have merely appointed Mr. Dardi "as the Dart Trust's true and lawful agent" with the power to "litigate securities fraud claims against the Company . . . ." ECF No. 45-2, at 4. As in *Huff*, that untimely document is not a valid assignment and therefore does not confer a legal title to the Dart Trust's claims. *See Huff*, 549 F.3d at 109. Nor has the Dart Trust executed a sufficient assignment of claims even under Cook Islands law to confer Dardi with the requisite property interest under *Huff*. Foreign law does not "alter the legal standard by which Article III standing is determined, *i.e.*, the requirement that non-beneficial owners of securities must have a property right in the claims being asserted." *See Gross*, 2019 U.S. Dist. LEXIS 128615, at *8. While foreign law may be relevant to "establish[ing] the existence of the requisite property right," *id.*, the Cook Islands International Trusts Act does not automatically assign a property interest in the trust to either a settlor or protector. *See* Miller Opp. Decl., Ex. A (Int'l. Trusts Act). [3]

---

[3]  *See* Alicia Adamczyk, *An isolated island nation is a tax haven for the ultrarich to hide their money*, FORTUNE (Oct. 21, 2024 6:00 AM), https://fortune.com/2024/10/21/the-ultra-rich-

All of these issues militate against the Dart Trust's appointment. *See Baydale v. Am. Exp. Co.*, 2009 U.S. Dist. LEXIS 71668, at *9 (S.D.N.Y. 2009) (denying lead plaintiff motion where movant raised complex issues of foreign law that would cause a "needless litigation sideshow" that could be averted by selecting another lead plaintiff). Given this uncertainty, the Court should find that, if appointed, defendants will challenge the Trust's standing to the detriment of the putative class. *See Schaffer v. Horizon Pharm. Pub. Ltd. Co.*, 2016 U.S. Dist. LEXIS 83175, at *10 (S.D.N.Y. 2016) (collecting cases and noting that "many courts have rejected appointments of lead plaintiffs based on potential risks."); *see also In re Healthsouth Corp. Sec. Litig.*, 213 F.R.D. 447, 464 (N.D. Ala. 2003) (denying class certification partially based on a lack of standing).

In *In re Imax Sec. Litig.*, for instance, the court considered whether to remove its previously appointed lead plaintiff over questions regarding its Article III standing. 2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. 2009). In approving the motion for reconsideration, the court stated:

> We agree with Judge Pauley that irrespective of whether the assignments of claim cure [the previously appointed lead plaintiff's] deficient Article III standing, [the lead plaintiff] now "faces unique legal issues that other class members do not." Were we to permit it to continue as lead plaintiff, it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal. There seems little reason for us to subject the class members to such a risk.

*Id*. at *11. Similarly, the Court should reject the Dart Trust's motion rather than subject the class to such future risks.

To the extent it attempts to do so, the Dart Trust may not seek refuge in the prudential exception to the injury-in-fact requirement either. The prudential exception permits third-party standing only "where the plaintiff can demonstrate (1) a close relationship to the injured party and

---

hide-their-money-in-this-south-pacific-nation-heres-how-they-do-it/ (detailing how the Cook Islands has become "one of the most popular offshore trust destinations in the past few decades" for Americans wishing to shield their assets from creditors and U.S. courts.)

(2) a barrier to the injured party's ability to assert its own interests." *Huff*, 549 F.3d at 109. However, the Trust has not even attempted to make the showing required of it to invoke this form of third-party standing. *See Plymouth Cnty. Ret. Ass'n*, 2021 U.S. Dist. LEXIS 180029, at *13 ("As noted above, Erste AM has failed even to establish any barriers that prevented Erste 566 from bring[ing] the securities claims for the shares that Erste 566 bought and sold.").

The Dart Trust's motion should therefore be denied.

### 3.   The Court Should Hold an Evidentiary Hearing

A proposed lead plaintiff may conduct discovery into the adequacy of another movant upon the showing of a reasonable basis to do so. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv); *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("In seeking evidence that could rebut the presumptive lead plaintiff's showing on these points, other plaintiffs may be allowed to conduct discovery . . . ."); *In re The Reserve Fund Sec. and Derivative Litig.*, No. 09 MD 2011 (S.D.N.Y. Aug. 5, 2009), slip op. at 1 (ordering limited discovery into whether the proposed lead plaintiff investor group "was formed in bad faith, was lawyer-instigated, or is likely to be lawyer-dominated"); *Andrade v. Am. Apparel, Inc.*, 2011 U.S. Dist. LEXIS 79795, at *17 (C.D. Cal. 2011) (granting discovery of proposed lead plaintiff).

Here, the Dart Trust purports to be a trust established for the benefit of Mr. Dardi and his wife and "registered under the Cook Islands International Trusts Act 1984." ECF No. 32-4, at ¶ 2. Dardi asserts that he is the "settlor and protector" of the Trust – whatever that means – and that he is "authorized to act on behalf of the Dart Trust through a [Limited] Power of Attorney executed on December 10, 2024." ECF Nos. 32-2 at ¶ 1; 32-4, at ¶ 2.

Beyond those sparse details, Mr. Dardi has not provided any other biographical information with which the Court can determine his or his wife's adequacy. This alone can and should result in the denial of the Trust's motion. *See Perez v. Hexo Corp.*, 2020 U.S. Dist. LEXIS 32381, at *7-

8 (S.D.N.Y. 2020) (declining to appoint a movant who "fail[ed] to provide any information regarding his experience in his preliminary motion"); *Gross*, 2019 U.S. Dist. LEXIS 225777, at *6 (rejecting a lead plaintiff movant as inadequate and lacking "basic transparency" because it "failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation.").

Unlike the other seven movants, for instance, Mr. Dardi has provided virtually no information about his or his wife's background, place of residence, or investment experience. *Compare* ECF No. 45-4, *with* ECF No. 36-3; *see Camp v. Qualcomm Inc.*, 2019 U.S. Dist. LEXIS 10269, at *8-9 (S.D. Cal. 2019) ("Singh failed to include any basic details about himself, including where he lives or who he is specifically in his motion. Due to these errors, the Court finds it difficult to determine whether Singh would indeed be a typical plaintiff for the class. Because Mistry has included such details, however, the Court finds he would be the better choice for lead plaintiff.").

Hence, were the Court inclined to seriously consider appointing the Dart Trust, Mr. Konigsberg requests the Court order Mirko Dardi and Fronzuance Tiseli to appear at the hearing on these motions to answer any questions the Court may have about these issues. In the alternative, it should allow Mr. Konigsberg's counsel to examine them under oath given that courts have granted discovery to address concerns about the adequacy of a proposed lead plaintiff, like the Dart Trust. *See In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (stating that "[a]lthough the Court was reluctant to grant the discovery," it "prove[d] illuminating" in rejecting the applicant).

Mr. Konigsberg has provided a reasonable basis for the Court to request the bare minimum—that Dardi and Tiseli appear to answer the legitimate questions raised herein. *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 854-55 (S.D. Ind. 1999) (ordering discovery to test

11

movant's adequacy to serve as lead plaintiff); *Cavanaugh*, 306 F.3d at 730 ("The district court may need to hold an evidentiary hearing, and to make a renewed determination of typicality and adequacy.") In the alternative, the Court can and should simply deny the Dart Trust's motion.

###### C.  Mr. Konigsberg is the "Most Adequate Plaintiff"

Mr. Konigsberg asserts a loss greater than any of the other movants remaining before the Court with losses of approximately $79,004.60 from his purchases of 24,565 Zeta securities. In comparison, the remaining two movants (*see* n.1, *supra*), Allegheny County Employees' Retirement System ("Allegheny") and Scott Vanderbosch, claim $40,016 and $22,757.10 in losses, respectively.[4] *See* ECF No. 21 at 1; ECF No. 18 at 5. Thus, Mr. Konigsberg is the "presumptively most adequate plaintiff" under the PSLRA. *See Cavanaugh*, 306 F.3d at 732 ("Once . . . the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements.").

In addition to this substantial financial interest in the litigation, Mr. Konigsberg satisfies the relevant adequacy and typicality requirements under Rule 23 and has provided specific evidence of his active leadership of this litigation. *See* ECF No. 36-3 (Konigsberg Decl.); *McCormack v. Dingdong (Cayman) Ltd.*, 2023 U.S. Dist. LEXIS 95871, at *5 (S.D.N.Y. 2023)

---

[4]  To the extent that Allegheny may attempt to argue that, despite the size of its smaller loss, it should be appointed because it is an institutional investor, that argument would lack merit. *See Gronich v. Omega Healthcare Inv'rs*., Inc., 2018 U.S. Dist. LEXIS 51934, at *11 (S.D.N.Y. 2018) ("[T]he statutory mechanism adopted by Congress favors institutional investors only insofar as they have the largest financial interest in the action and meet the requirements of Rule 23."). "[T]he language of the Act does not require that institutional investors take precedence over individual plaintiffs who are otherwise qualified to serve in a lead capacity." *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 10200, at *13 (E.D. Pa. 2004); *Telxon*, 67 F. Supp. 2d at 820-22 ("The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor . . . .").

(stating that in appointing a lead plaintiff, "courts should consider 'the substantive policies of the governing statute' which are to ensure that securities class actions are managed by 'active, able class representatives who are informed and can demonstrate that they are directing the litigation.'").

As demonstrated in his memorandum in support of his motion for lead plaintiff (ECF No. 34), Mr. Konigsberg's claims are typical of the claims of the class. Like all other class members, Mr. Konigsberg: (1) purchased Zeta securities during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) was damaged thereby. *See* ECF No. 34 at 8; *Micholle v. Ophthotech Corp.*, 2018 U.S. Dist. LEXIS 41120, at *16 (S.D.N.Y. 2018) ("With respect to typicality, courts consider whether the claims of the proposed lead plaintiff arise from the same conduct from which the other class members' claims and injuries arise.").

Mr. Konigsberg also satisfies Rule 23's adequacy requirement because he is clearly aligned with other class members, there is no evidence of any conflicts, he has a significant interest in this case to ensure the vigorous prosecution of this litigation, and he has demonstrated his commitment to prosecuting this action efficiently and in the best interests of the class. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008) (finding a movant had made a preliminary showing of adequacy as he was represented by experienced counsel, did not have any interests that were antagonistic to the putative class, and had a significant financial interest in the outcome of the case).

Further, and as is relevant here, Mr. Konigsberg: (i) personally invested in Zeta stock during the Class Period; (ii) is fully aware of the facts of this litigation; (iii) has been, and continues to be, engaged in the litigation; and (iv) has affirmed his commitment to satisfying the fiduciary

13

obligations that he will assume if appointed as Lead Plaintiff. *See* ECF No. 36-3. Moreover, Mr. Konigsberg has selected highly experienced counsel to pursue the class's claims against Defendants. *See* ECF No. 36-4.

Mr. Konigsberg has selected Kahn Swick & Foti, LLC ("KSF") as Lead Counsel, a firm that has substantial expertise and experience in the prosecution of shareholder and securities class actions in federal and state courts across the country. *See* ECF 34 at 8-10. KSF is a national law firm with offices in Louisiana, California, and New York, and courts have repeatedly found KSF well-qualified to serve as Lead Counsel in securities class actions such as this. *See* ECF No. 36-4.; *Bangzheng Chen v. CytRx Corp.*, 2014 U.S. Dist. LEXIS 194696, at *9 (C.D. Cal. 2014) ("Based on the firm's résumé and experience with class action securities litigation, the Court is satisfied that Kahn, Swick & Foti, LLC is qualified to serve as lead counsel in this case."); *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2020 U.S. Dist. LEXIS 49786, at *29 (S.D.N.Y. 2020) (approving KSF as lead counsel).

Furthermore, KSF has a record of securing significant victories for the court-appointed lead plaintiff and class through its wealth of experience in securities litigations such as this. *See Khoja v. Orexigen Therapeutics*, 2021 U.S. Dist. LEXIS 230105, at *30 (S.D. Cal. 2021) ("Lead Counsel overcame several hurdles before the parties settled the case, and settlement may not have been reached without Lead Counsel's skill and expertise."). Just recently, KSF obtained a $165 million recovery for Blackberry investors, following nearly nine years of determined litigation in this District including a successful appeal in the Second Circuit. *See Pearlstein v. Blackberry Ltd.*, 2022 U.S. Dist. LEXIS 177786, at *26-27 (S.D.N.Y. 2022).

Recently, during the final approval hearing for the $189 million settlement KSF achieved with co-counsel in *Dicker v. TuSimple Holdings*, *Inc.*, the court praised Plaintiffs' Counsel, stating

14

that "the return for the Plaintiffs I think is pretty remarkable. So I think you did a remarkable job on the Plaintiffs' side." Final Approval Hrg Tr. 6:9-12 (*Dicker v. TuSimple Holdings*, *Inc.*, Case No. 3:22-cv-01300-BEN-MSB (S.D. Cal. Dec. 2, 2024)). Thus, the Court may be assured that in the event Mr. Konigsberg's motion is granted, the members of the class will receive the highest caliber legal representation available from KSF. *See* ECF No. 36-4.

## III.    CONCLUSION

For all of the foregoing reasons, Mr. Konigsberg's motion should be granted, and all other motions should be denied.

DATED: February 4, 2025

Respectfully submitted,

**KAHN SWICK & FOTI, LLC**


By: *s/ Kim Miller*
Kim Miller (KM6996)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3732
kim.miller@ksfcounsel.com

-and-

Ramzi Abadou
(*pro hac vice to be submitted*)
**KAHN SWICK & FOTI, LLP**
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

-and-

Lewis S. Kahn
(*pro hac vice to be submitted*)
James T. Fetter
(*pro hac vice to be submitted)*
Alexandra Pratt

15

(*pro hac vice to be submitted*)
**KAHN SWICK & FOTI, LLC**
1100 Poydras Street, Suite 960
New Orleans, Louisiana 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com
james.fetter@ksfcounsel.com
alexandra.pratt@ksfcounsel.com

*Counsel for Movant Amir Konigsberg*

16

## **CERTIFICATE OF SERVICE**

On February 4, 2025, the foregoing document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*s/ Kim Miller*
Kim Miller

17