UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------:

ARMIN DAVOODI, Individually : Case No.: 24-cv-8961

and on Behalf of All Others :

Similarly Situated,         :

                Plaintiffs,  :

        v.                   :

ZETA GLOBAL HOLDINGS CORP., : New York, New York

et al.,                      : February 18, 2025

                Defendants.  :

---------------------------:

TRANSCRIPT AND STATUS CONFERENCE HEARING

BEFORE THE HONORABLE DALE E. HO

UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiff:        KAHN SWICK & FOTI, LLC
Konigsberg            BY:  Ramzi Abadou, Esq.
                      580 California Street - Suite 1200
                      San Francisco, CA 94104

For Movant:           BLOCK & LEVITON LLP
Dart Trust            BY:  Jacob A. Walker, Esq.
                           Jeff Block, Esq.
                           Sarah Delaney, Esq.
                      260 Franklin Street - Suite 1860
                      Boston, MA 02110

For Alleghany:        LABATON KELLER SUCHAROW LLP
                      BY:  Francis P. McConville, Esq.
                      140 Broadway
                      New York, New York 10005

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service


AMM TRANSCRIPTION SERVICE - 631.334.1445

APPEARANCES (Continued)


For Stephanson:        BLEICHMAR FONTI & AULD LLP
                       BY: Ross Shikowitz, Esq.
                       300 Park Avenue - Suite 301
                       New York, New York 10022


For Davoodi            GLANCY PRONGAY & MURRAY LLP
& Vanderbosch          BY:  Charles Linehan, Esq.
                       1925 Century Park East
                       Suite 2100
                       Los Angeles, CA 90067

For Defendants:        LATHAM & WATKINS
                       BY:  Megan A. Behrman, Esq.
                       1271 Avenue of the Americas
                       New York, New York 10020

THE DEPUTY CLERK:  The Judge has been brought into the conference, so we can begin.  The Honorable Dale E. Ho presiding in the matter of Davoodi v. Zeta Global Holdings Corp. et al.; Docket Number: 24-cv-8961.

Counsel, can you please state your names for the record, starting with the plaintiff.

MR. ABADOU:  Good morning, Your Honor. This is Ramzi Abadou from Kahn Swick & Foti in San Francisco, California, on behalf of lead plaintiff movant, Mr. Konigsberg.

MR. WALKER:  Good morning, Your Honor. Jacob Walker from the law firm Block & Leviton in Boston, on behalf of lead plaintiff movant, DART Trust.  My colleagues, Jeff Block and Sarah Delaney are on the line as well, but I'll be presenting today.

MR. MCCONVILLE:  Good morning, Your Honor. Frank McConville -- good morning.  Frank McConville of the law firm Labaton Keller Sucharow, appearing on behalf of Allegheny County Employees Retirement System.  I will be presenting before the Court today.

MR. SHIKOWITZ:  Good morning, Your Honor.

Ross Shikowitz from the law firm of Bleichmar Fonti & Auld. I represent lead plaintiff movant, Eric Stephanson, and I'll also plan to present quickly today.

MR. LINEHAN: Morning, Your Honor. This is Charles Linehan from Glancy Prongay & Murray. I represent the initial plaintiff, Davoodi, who filed the case. I also represent Scott Vanderbosch, who filed the lead plaintiff motion but then withdrew the motion. I'm not in the lead plaintiff fight, so I was not planning on presenting. I'm not pro hac, but I decided to be on the call. If the Court wants to ask me any question about any of that, I'm here.

MS. BEHRMAN: Good morning, Your Honor. This is Megan Behrman from Latham & Watkins on behalf of defendants.

THE DEPUTY CLERK: Counsel, this is a reminder that this is a public proceeding. Members of the public and press can access the proceeding with a public dial-in number. Please be aware that just as if you were physically present in the courtroom, you are prohibited from recording, rebroadcasting or disseminating any recording of court proceedings, including this one.

Your Honor.

AMM TRANSCRIPTION SERVICE - 631.334.1445

THE COURT:  Good morning.  We're here for a conference on the motions to appoint lead plaintiff and lead counsel in this matter.  I reviewed the filings.  What I guess I would ask is -- I'll ask, I guess, counsel for each of the movants to speak briefly, and then I'll run through each of the factors.

I'm not asking you to sort of engage with each other's arguments at this point.  Just give me the argument as to, you know, why your client should be the lead plaintiff.  And I'm going to go in order of what I understand anyway.  And obviously if I have this wrong, folks should correct me as you go, but I think I'm going to go in order of my understanding of financial interest.

So why don't I start with counsel for DART Trust, and I believe it was Mr. Walker.

MR. WALKER:  Yes.  Good morning, Your Honor, and thank you.  It's Jacob Walker on behalf of DART Trust.

DART Trust has the largest financial interest.  I don't think that's disputed by any of the parties.  It's over four times larger than the interest of Mr. Konigsberg, who is the only movant who filed any sort of substantive opposition to our

motion.  That largest financial interest entitles us to a presumption that must be rebutted with proof. And as we said in our papers, we don't think that Mr. Konigsberg has that proof.  He puts forward two arguments.  I know you sort of cautioned you don't want to get into the back and forth yet, so I won't belabor them, but the DART Trust has standing.  It is the entity that purchased the shares in Zeta.  It is wholly unlike the entity in the *Deloitte* case that Mr. Konigsberg cites to.

If there was a resolution of this case and there was a claim form for a settlement or, you know, or judgment, it is the DART Trust that would fill out that claim form because it is the DART Trust that purchased the shares at issue.  And so, you know, we don't think that the standing issue, standing argument has a lot of purchase here.

And then on the timeliness issue, again, what happened is that the power of attorney that allowed our client, Mirko Daughtery, to act on behalf of the trust was inadvertently not filed along with the certification.  One of the other counsel in the case informed us of this.  As soon as we were informed, we fixed the filing.  This was not gamesmanship.  There's no prejudice shown to anyone

from the fact that it wasn't timely filed.  It was registered as a filing error on ECF.

And so we think that the cases, again, cited by Mr. Konigsberg are wholly different.  They dealt with parties who were changing the transactions, trying to modify their losses.  Cases where there was real prejudice from a late filing.  And that's not what's present here.  So given your admonition, I'll hold off on any further argument unless the court has questions.

THE COURT:  Okay, I probably will have some questions, Mr. Walker, but why don't I move on down the line first and turn to counsel for Mr. Konigsberg.  And I apologize, I didn't catch your name.

MR. ABADOU:  Good morning, Your Honor.  This is Ramzi Abadou from the law firm Kahn Swick & Foti calling from San Francisco.  Good morning.

THE COURT:  Good morning.

MR. ABADOU:  Mr. Konigsberg -- and I appreciate your admonition on argument, so I'll resist arguing standing matters like that until you call on me for that.  Mr. Konigsberg, his motion is effectively unopposed to trigger the presumption under the PSLRA, Your Honor.  You need to

demonstrate the largest financial interest.  But what my colleague left out is that you also have to make a prima facie showing of adequacy and typicality under Rule 23, which Mr. Konigsberg has done, and we've explained why in his papers.  But I think one of the most important documents that's filed with any lead plaintiff motion is an adequacy declaration.

Ours was filed, Your Honor, at document 36-3, which provides Mr. Konigsberg's background and experience and sophistication as an investor that satisfies the adequacy requirement of Rule 23.  I would point out that the DART Trust and its beneficiary and its settlor have not provided any such information.

In fact, on page 8 and 9 of their reply, they say there is no -- nor is there any occasion to provide any "Additional biographical information about Mr. Daugherty."  The PSLRA does not require lead plaintiff movants provide information beyond the certification listed in the statute.

In a case that we cited that was penned by Judge Buchwald, it's called *Perez v. Hexo*, which is in our papers, she rejects that proposition that a prima facie showing of adequacy does not require

anything more than a movant's PSLRA certification. In fact, she says, "Simple case law supports what one would have thought is an uncontroversial point, namely, that even a preliminary showing of adequacy requires a threshold amount of information regarding an individual's, movant's background and sophistication."

I'm not sure why the folks at the DART Trust refused to provide that information even on reply, but the reason it's important, Your Honor, and defense counsel is on the phone, is defense counsel will find out at some point, this biographical background information.  They will determine whether or not either Mr. and Mrs. Daugherty have ever been convicted of crimes or engaged in fraud.  They'll determine where they live, what their experience is.

And we, you know, are somewhat surprised that they didn't provide that information to the Court, as it is required in this district.  And we cited other cases as well on the point.  I think it's *Gross vs. AT&T* by Judge Caproni mirrors what Judge Buchwald said.  So I think we alone, my client alone satisfies all of the PSLRA's requirements. And I'll just await the Court's questions.

0

Thank you, Your Honor.

THE COURT: Okay. Thanks. Why don't I actually pose a few questions to you. And I just want to make sure that I understand what's off the table. And I hear you're going to the adequacy inquiry, so I think that's what we're going to be spending our time talking about. But I just want to confirm that there is no dispute as to largest financial interest, right? That DART Trust purchased the largest total number of shares during the class period, net shares, expended the most net funds and asserts the largest approximate losses; is that right?

MR. ABADOU: That is right, Your Honor. We can see that they assert the largest financial interest of all the movants in this case.

THE COURT: Okay. And as to the Rule 23 factors, at least the ones that I'm considering here, you're only contesting adequacy, you're not contesting typicality, right?

MR. ABADOU: That is correct. We're contesting adequacy on the front end to trigger the presumption under the PSLRA. But we're also suggesting and arguing that the DART Trust is subject to unique defenses, even if the presumption

was triggered, that that presumption has been rebutted based on our standing arguments.

THE COURT:  What I understood your standing arguments to be in your brief, other than, you know, the timeliness, was that a trust cannot have standing.  Is that over reading what you're arguing?

MR. ABADOU:  It's not, Your Honor.  I would refine it a little bit.  A trust is merely a right and property held in a fiduciary relationship by one party, and that party is called the trustee.  Under New York State law, the trustee had standing to bring this case against the Zeta.  The trustee here, Your Honor, for whatever reason, did not do so.  The trust is not a legal entity that can bring a lawsuit in its own name.  It has to operate through its trustee, for whatever reason.

The trustee here gave Mr. Daugherty a limited power of attorney, and that's at Document 45-2.  That limited power of attorney is facially insufficient under Second Circuit precedent and a myriad of cases throughout the country since *Huff* that say, "A limited power of attorney is insufficient to confer standing on another person." Here what's required under *Huff* is an assignment, a property assignment that, for whatever reason, the

DART Trust didn't provide.  And you know --

THE COURT:  If I may, Mr. Abadou, there are cases, and I know there -- you know, the motions, I believe, in these cases were unopposed.  But there have been cases appointing a trust as lead plaintiff, right?

MR. ABADOU:  Yes, and I'm glad you raised that, Your Honor, because the cases that were cited by the DART Trust, I think it's *ZTO Express* and cases like *Perez v. Target*.  What we did, Your Honor, is we pulled the pleadings in those cases and the certifications, and while the trust was appointed, the trust was appointed in all of those cases that were cited by the DART Trust because the trustee himself or herself signed the certification.

So that's a distinction with a difference, because as we've argued in our papers here, had the trustee signed the certification and moved on behalf of the trust, I don't think we would have filed an opposition.  Again, for whatever reason, that wasn't done here.

So, for instance, in *ZTO Express*, the trust was appointed and all other motions were withdrawn, presumably because the trustee moved on the trust's behalf and signed the trust PSLRA certification.

There it was, "The Wong Family Trust by trustee, Sao Ching Don Wang hereby moved."  Same in *Perez vs. Target*, the trust moved through its trustee, not a power of attorney.

And so we think these cases that were cited by the DART Trust itself, kind of, makes our argument.  And again, I don't know why the trustee in this case didn't move, but the fact is it didn't on behalf of the trust.  It gave Mr. Daugherty an invalid power of attorney, which violates the clear language of *Huff*.

And, in fact, Your Honor, *Huff* involved an investment advisor.  And I'll quote from the DART Trust reply, "Mr. Daugherty, who provided investment advice to the trust in purchasing the woman's stock, was given a power of attorney to act on behalf of the trust."  Under *Huff* and its plain language, which we quoted in our brief, that is insufficient. It used to be okay pre-*Huff*, post-*Huff*, the Second Circuit and courts applying it have said it's not enough.

So we think our standing argument is a very, very powerful argument.  It's a threshold argument that the Court has to consider.  And if it were appointed in this case, I can assure you that

the motion to dismiss -- defendants will move to dismiss based on standing. And so that's why we asked for an evidentiary hearing. But we think the case law is clear that based on how this was structured, the trust -- or I'm sorry, Mr. Daugherty lacked standing.

There's one other issue I wanted to raise very quickly on this point, which is, the DART Trust of Mr. Daugherty suggests that, you know, that his wife is not, you know, some random third party. And on that point, Your Honor, Judge Scheindlin penned an opinion in *eSpeed* that said, "A husband who acts as an investment advisor must demonstrate standing on behalf of his spouse." And we urge the Court to read that decision because this kind of random third-party argument is a problem for the DART Trust and potentially for the class were it appointed.

We'll also note that the DART Trust on reply didn't really address many of the cases that we cited. Perhaps they can explain why, but the cases they did cite in support of their own arguments, I think fail and actually prove the point.

THE COURT:  Mr. Abadou, you said at one point that the case law is very clear here, but I

will confess that in my research, I haven't been able to locate a case that says that. I think, as you argue, and again, correct me if I have this wrong, that a trustee would have standing but not a trust. Is there anything that -- I know you've pieced together a few different arguments here, but is there anything that comes out and explicitly says that?

MR. ABADOU: Sure, and I can provide a citation, Your Honor, that's very recent for you and your clerks, it's 2024 U.S District Lexis 166609, Pinpoint 11; it's an Eastern District of New York case called *Raff vs. Banach*. All this trust stuff, if you will, arises under state law. We're in New York here. And let me quote from this decision. "Under New York law, tort claims stemming from alleged wrongs committed against the trust are claims personal to the trust and can only be brought by trustees." It's a really uncontroversial point. This decision cites or quotes a New York State case that, in turn, cites a Second Circuit decision, 858 F3d 719 at 730. And so that's why I say this black letter law on trust is quite clear. And --

THE COURT: This isn't in your opposition brief though, right?

MR. ABADOU:  I'm sorry, Your Honor?

THE COURT:  I'm taking down notes, but this case is not in your opposition brief; is that right? I can't find it by looking at your opposition.

MR. ABADOU:  This particular case is not. But we cited another case for the same proposition. It may not have been as clear.  The language may not have been as clear, but let me try and -- the case we cited, Your Honor, is on page 7 of our brief. It's page 13 of the ECF.  It's *Ken Bank vs. Shearson*, "The trustee of a trust is the legal owner of the trust's assets and has standing to bring an action to recover losses sustained by the trust as a result of the wrongful and fraudulent actions of a defendant."  I think there are cases -- yeah.

THE COURT: Okay.  Okay.  Thank you, Mr. Abadou.

Why don't I come back to Mr. Walker and allow Mr. Walker to respond to some of the points that you raised.

MR. ABADOU:  Thank you.

THE COURT:  Mr. Walker?

MR. WALKER:  Sure.  Yes.  Jacob Walker, again.  Thank you, Your Honor.

First, I wanted to respond to the notion

that the DART Trust and Mr. Daugherty didn't put in any kind of adequacy declaration.  You'll find a declaration from Mr. Daugherty at ECF number 32-4, explaining his background, investment experience and things of that nature.

On this point about the trust, I think there's just an analytical step that's missing in Mr. Konigsberg's argument.  And here, again, the difference between the *Deloitte* case, the *Huff* case and here is that in that *Huff* case, it was the investment advisor who was purporting to be the plaintiff.  The investment advisor, who invested on behalf of a number of pension funds, filed a case as the plaintiff themselves, and they did so only with powers of attorney.

That's just not what we have here.  Here we have the DART Trust, who can only act through people and acted through its trustee.  And its trustee assigned the right to litigate this case to Mr. -- and to move as lead plaintiff to Mr. Daugherty.  And so it is true that he -- that Mr. Daugherty isn't a stranger to the trust.  He is the settler and protector of the trust.  He does provide it investment advice.  The trust's beneficiary is his wife.  He is not -- he is not a stranger in any way

to the trust.  But it is the trustee who empowered Mr. Daugherty to take these actions.  And so that's the step that's just different here than what you saw in *Huff*.

In *Huff*, it was an investment advisor who was acting as plaintiff, and the Court found that the investment advisor didn't have standing.  But there is no question here that the DART Trust is the one who bought the shares and who suffered the loss, who would, again, file a claim form if this case resolves.

THE COURT:  Okay.  Thank you, Mr. Walker. Why don't I go -- well, let me -- I'll come back to -- why don't I come back to Mr. Abadou.

Mr. Abadou, are you there?

MR. ABADOU:  Yep, I am here.

THE COURT:  You know, it does seem like a different situation than in *Huff*, where you had the investment advisor, you know, as the proposed lead plaintiff here as opposed to the trust.  It's, you know, here we have the trust which made the purchases itself, right?  So how is that not an important distinction?

MR. ABADOU:  It's not, Your Honor, because the trust here, and this is a very important point.

It says -- my colleague said that Mr. Daugherty was empowered by the trustee.  He was not under *Huff*.  In order for the Trustee to empower Mr. Daugherty, he had to provide an assignment to Mr. Daugherty, and he did not do that.  He provided a limited power of attorney.

THE COURT:  Mr. Daugherty isn't asking to be proposed plaintiff himself, right?  It's the -- the trust is still the proposed lead plaintiff, right?  Mr. Daugherty just has the power of attorney.  Am I missing something?

MR. ABADOU:  Yes.  Because to act on behalf of the trust, he has to have the legal authority to do so, and we don't believe that --

THE COURT:  The power of attorney doesn't do that?  I thought you were referring a moment ago to an assignment which --

MR. ABADOU:  An assignment --

THE COURT:  Maybe a misunderstanding here, but that sounds different than having legal authority.  That seems like an ownership assignment.

MR. ABADOU:  That ownership interest would have had to have been given by the trustee to Mr. Daugherty.  It was not.  He was given a limited power of attorney.  If they had been provided -- if

Mr. Daugherty had been provided an assignment and ownership interest that the trustee has, I don't think we would be sitting here today.  If the trustee --

THE COURT:  Mr. Daugherty is not seeking to be the lead plaintiff himself.  So I don't understand why he needs an ownership interest.  He's simply the person through which the trust is acting in order to serve as a lead plaintiff.  Do I not have that right?  Again, tell me if I'm misunderstanding something.

MR. ABADOU:  I don't think you're misunderstanding that he is moving on behalf of the trust.  What we are arguing is that he does not have the authority to move on behalf of the trust.  That the trustee had the authority to move on behalf of the trust, as is reflected in the cases that Mr. Daugherty cited, where the trustee moved on behalf of the trust.

That is the step that I think we are concerned about and that we raised in our papers, that in order to move on behalf of the trust, he has to have that ability.  And we don't believe that a limited power of attorney provides him that ability. We believe that under *Huff* that right had to be

assigned to Mr. Daugherty, and it wasn't.

THE COURT: Okay. Let me come back one more time to Mr. Walker. Would you like to respond to that?

MR. WALKER: Sure. No, I think that -- I think you've got it exactly right, Your Honor. There's no -- Mr. Daugherty wasn't assigned the claim because he doesn't -- he's not looking to bring the claim on his own behalf. He wouldn't be the person who would file a claim form again if the case settled, the DART Trust would.

The trustee of the DART Trust, in his power as a trustee, gave a power of attorney to allow Mr. Daugherty to act on behalf of the trust for all of the things that are required for moving in this case. And that's completely different than what happened in *Huff*, where it was the investment advisor who was seeking to be the plaintiff. There, it only would have made sense if you assigned the claims to the investment advisor. That's not what happened there. But this is totally different, again, for the reasons that I think you understand and that we've discussed.

THE COURT: So, just so I confirm that I remember this correctly, in *Huff*, the investment

advisor was seeking to be the lead plaintiff?

MR. WALKER:  Yes, and I went back to the underlying cases and confirmed that this morning. The plaintiff -- exactly, the plaintiff in the case was the investment advisor, *Huff* himself.  Exactly.

THE COURT:  Let me ask you, just circling back to something that Mr. Abadou was pointing me to about New York law.  Is it right that -- well, let me put it this way, does a trust have standing to sue under New York law, or does only the trustee?  I think I heard Mr. Abadou make an argument to that effect.

MR. ABADOU:  Your Honor --

MR. WALKER:  I'm not --

MR. ABADOU:  Yeah, go ahead.

MR. WALKER:  Sorry.

THE COURT:  Why don't I make sure that I understand your argument, Mr. Abadou, and then I'll go to Mr. Walker.  Go ahead.

MR. ABADOU:  The trust does not have standing to sue.  A trust is merely a right in property held in a fiduciary relationship by the trustee for the benefit of a beneficiary.  The trustee holds title to property in the trust.

THE COURT:  Right.  That's what I

understood your argument to be.  So I just wanted to confirm that I understood your argument.  Let me -- and let me just get Mr. Walker's response.

MR. WALKER:  Well, I think the response is that, you know, you do -- like you -- there are times where you see that, right, it is XYZ Trust or XYZ trustee on behalf of the trust.  And that's the person who's, for instance, in the cases we talked about and we cited to, you know, signing a declaration.  Here, it is the trustee that has the powers to litigate on behalf of the trust and have given those powers to Mr. Daugherty through the power of attorney.

And so, you know, I don't -- I think it is a distinguished difference without a distinction.  And also, it is a -- it is not a New York trust.  It's a Cook Islands Trust.  But again, I'm not sure that the -- I'm not sure that the distinction matters because the trustee acted on behalf of the trust to give the power of attorney to Mr. Daugherty.

THE COURT:  Okay.  Thank you, Mr. Walker.

I think I understand your respective positions.  I just want to go down the line and see if any of the other movants have anything to add.

Why don't I go to counsel, and I apologize, I didn't hear your name.  Counsel for Mr. Stephanson.

MR. SHIKOWITZ:  Yes, thank you, Your Honor. This is Ross Shikowitz on behalf of Mr. Stephanson.

THE COURT:  Okay.  Mr. Shikowitz, do you have anything to add here?

MR. SHIKOWITZ:  Yes, Your Honor, to the extent the Court has concerns with respect to the DART Trust, Mr. Stephanson should be appointed.  He has the largest financial interest of the DART Trust, and his adequacy and typicality is not contested.

Mr. Stephanson filed a notice of non-opposition, but his motion remains pending.  He informed the Court and the remaining movants that he's willing and ready to serve his lead.  And so, to the extent the Court has concerns with the DART Trust, Mr. Stephanson respectfully requests that his motion be granted.

THE COURT:  Thank you.  I see.

Now, as far as financial interest goes, my understanding is that Mr. Konigsberg purchased more shares and more net shares and expended more net funds during the class period.  Is that not right?

MR. ABADOU:  I believe that is right, Your

Honor.  This is Ramzi Abadou.  You know, I think --

THE COURT:  Let me just -- let me just --

MR. ABADOU:  Yeah.

THE COURT:  Excuse me.  Excuse me, everyone.  Just a moment.  We don't have a court reporter on.  I am recording this so that if anyone wants it transcribed later, it can be transcribed.  So if you're going to jump in, you've got to say your name beforehand, otherwise the court reporter is not going to know who's talking.

So I heard Mr. Abadou say that I had it right, that Mr. Konigsberg purchased more shares, more net shares and expended more net funds during the class period.  But then -- Mr. -- I'm sorry, counsel for Mr. Stephanson, would you say your name again?

MR. SHIKOWITZ:  Sure, Your Honor.  Thank you.  Mr. Shikowitz.

THE COURT:  -- Shikowitz, you were going to respond?

MR. SHIKOWITZ:  Yes, thank you, Your Honor.  And I apologize for the delay.  My microphone was muted.

THE COURT:  No worries.

MR. SHIKOWITZ:  You have it exactly right.

AMM TRANSCRIPTION SERVICE - 631.334.1445

Mr. Konigsberg did purchase more shares, net shares and net funds expended than Mr. Stephanson. However, Mr. Stephanson incurred by far a larger loss than Mr. Konigsberg.  Mr. Stephanson's loss is roughly $110,000, while Mr. Konigsberg's loss is roughly $79,000.  And given the margin of disparity between the losses, Mr. Stephanson asserts has the -- has a larger financial interest than Mr. Konigsberg.

THE COURT:  Okay.  Mr. Abadou, are those facts right?  And then can you respond on the financial interest point when there's a greater loss for one movant, but the other factors favor the other?

MR. ABADOU:  Sure.  I wanted to make just a threshold point, Your Honor, on this, which is, you know, I've been doing this for 20, almost 24 years now.  And when a movant files a notice of non-opposition, that is what courts view as an abandonment of the motion.  We have authorities on this point, but we think it's somewhat troublesome for Mr. Stephanson, who effectively abandoned his motion, to now have viewed our papers in opposition to the DART Trust and say, wow, you know, maybe if we had made these arguments, you know, our client

would be appointed.  But I think that's a threshold issue.  I'm happy to provide the Court with authorities on that.  I think we may have already cited one.

But on financial interest, you know, I think you had it right at the beginning of the hearing, which is the DART Trust has the largest, and we have the second largest, because we are the only movant to oppose the DART Trust and pursue our motion.  We think Mr. Stephanson has abandoned his motion.  And to kind of jump in here at the very end without us having an opportunity to respond is prejudicial, and, quite frankly, a little unfair.

THE COURT:  Okay.  I understand your point in that regard, Mr. Abadou.  But just in terms of -- let's just set it aside for just a second.  And in terms of determining largest financial interest, when three of the four factors point one way, but loss amount points the other way, what am I supposed to -- how do I determine who has the largest financial interest as between two competing movants? And again, without prejudice to your argument that Mr. Stephanson has waived this.  Go ahead.

MR. ABADOU:  It's a fair question, Your Honor.  Of course, you know, my initial argument is

that you should look at the three factors that outweigh loss.  But the truth of the matter is, in fairness, you know, all of the lawyers on this call can cite authorities for different propositions on how to determine financial interest.  And that's because the PSLRA itself doesn't have a definition for financial interest.

Oftentimes courts, you know, particularly in this circuit, in the Ninth Circuit here, you know, we'll look at, for instance, retained shares above losses, and say losses aren't as important as retained shares because somebody who's holding the bag at the end of the case has incurred the most damage.

And so courts have struggled with financial interest since the enactment of the PSLRA.  The four factors that you're talking about are called the Lax factors or the Olsen factors.  You know, I think, you know, if, on balance, you have filed an opposition, pursued your motion and you've got three out of the four, I think courts would say you've got the largest financial interest in that scenario.

There are cases out there that say losses are the most important of the four factors.  I won't deny that.  But I think in this context, looking at

the three factors that we prevail on over Mr. Stephanson is the way I would urge the Court to interpret financial interest.  But again, this is kind of a weird scenario where somebody who effectively abandoned their motion is jumping back in because they've seen the arguments that my client has raised against the DART Trust and said, hey, we should get on this call because now we've got an argument under losses alone that were next to mine.

THE COURT:  Okay.  Thank you.  Thank you, Mr. Abadou.

Mr. Shikowitz, can you respond to this point about the non-opposition that you filed?

MR. SHIKOWITZ:  Yes, Your Honor.  So we filed a non-opposition.  You know, courts, regardless of, you know, if we filed a non-opposition, if everybody filed a non-opposition or if everybody consented to a movant being appointed lead plaintiff, the Court, as a gatekeeper for absent class members, has an independent duty to assess the motions before it.  So, you know, courts have appointed movants after they filed notices of non-opposition or if they've even consented to another movant being appointed.

So, for example, Your Honor, in the Doral

securities litigation, which was in this district, there were five motions filed.  One of the movants, which was a group of investors named the Institutional Investor Group, withdrew its motion in support of a different movant, but noted in its papers, just like we did, that it stands ready, willing and able to serve as lead plaintiff.

The Court there expressed concerns that the movants each -- which isn't an issue here, but expressed concerns that the movants organized themselves into groups.  And then what the Court did was it appointed a single member of the institutional investor group, which had, in fact, withdrawn its motion.

And here, Your Honor, we didn't withdraw our motion.  Our motion is pending, and we stated our willingness to continue to serve as lead.  The *Doral* case is 414 F.2d 398.

And more recently, Your Honor, in -- there's a securities litigation before Talis or involving Talis, which is a pharmaceutical company, in which my firm is actually involved, that's before Judge Illston in the Northern District of California.  And there, there were four motions filed for lead plaintiff appointment.  And the

movant that had the largest financial interest there was totally unopposed. Judge Illston held a hearing. The Court raised concerns with respect to whether that movant was based overseas, would create logistical difficulties for the litigation. It was a concern the Court raised sua sponte, on its own initiative without any briefing or input from the parties. And the Court then continued the hearing. And then the movant with the largest and second largest financial interests -- the movant with the second largest interest filed a notice of non-opposition, just like every other movant. And then they agreed to work together, and the Court appointed them. The Talis citation, Your Honor, is 2022 Westlaw 1914066.

THE COURT: Let me just confirm, you're not raising any issues with respect to Mr. Konigsberg, are you?

MR. SHIKOWITZ: Correct.

THE COURT: Okay. So there are no questions as to -- I mean, you're disputing who has the largest financial interest, I understand that. But there are no questions as to whether or not Mr. Konigsberg can satisfy the Rule 23 factors that I'm to consider at this time, right?

MR. SHIKOWITZ:  Correct.

THE COURT:  Okay.  I just want to confirm that.  All right.  Thank you.

Can I come to counsel for Allegheny County, the retirement system.  And I'm sorry, I didn't catch your name.

MR. MCCONVILLE:  Not a problem, Your Honor. This is Frank McConville from the law firm Labaton Keller Sucharow on behalf of Allegheny County.

The only point that we'll raise, and not to get too far back in the history books here, but the PSLRA was designed to encourage large institutional investors like Allegheny County to seek lead plaintiff status and serve in that fiduciary capacity.  You know, as a professional fiduciary, this is what Allegheny County does.  They have a staff and resources, and they're well equipped and experienced to serve in the lead plaintiff capacity.

So the only thing we would add is, you know, considering the discussion we're having today about the DART Trust and some of the issues therein, it is within the Court's discretion and certainly the Court's authority to appoint Allegheny County as a co-lead plaintiff in addition to whoever the Court determines is the most adequate plaintiff between

the various movants.  And this is not an approach that would be unique or certainly would not be off the beaten path.  In fact, Mr. Abadou, who is counsel for Mr. Konigsberg, cited the AT&T case in which Judge Caproni in circumstances nearly identical to those here today, knocked out the largest movant in that case based on some issues with its transparency and whether or not it can meet the adequacy standard.

And then the judge went down the list and appointed some institute -- or sorry, some individual investors to serve as lead plaintiff. But, you know, to ensure that the class was adequately protected and in the Court's determination in the best interest of the class, the Court also appointed a large institutional investor as a co-lead plaintiff, you know, to ensure that there are, you know, entities involved that have experience and resources to serve as a lead plaintiff.

So the only thing we would add, Your Honor, is that you have the authority, certainly in the discretion to appoint Allegheny County as a co-lead plaintiff in the instance that, you know, there are any concerns with the various movants above us.  And

I will add that Mr. Konigsberg, as far as we can tell, is a resident of Tel Aviv in Israel, which could create, you know, being foreign overseas, and of course, the DART Trust is in the Cook Islands, so there could be some logistical issues.

Just from a practical standpoint, having Allegheny County as a domestic institution would be, you know -- would potentially be in the best interest of the class and really serve everyone here.  And so, you know, that's the only point we would add.

THE COURT:  Okay.  Thank you.  So you wouldn't be seeking to be appointed as solely plaintiff; is that right?

MR. MCCONVILLE:  We have not made arguments to that extent, Your Honor.  There are some movants ahead of us that we recognize have larger financial interests.  And of course, you know, if there are anyone with --

THE COURT:  There are at least three here who have twice or two times or more than that in terms of your loss amount, right?

MR. MCCONVILLE:  Correct.  And we -- and we don't doubt that any of those individuals, perhaps outside of the DART Trust, could, you know,

effectively serve as a lead plaintiff. You know, inadequately serve in that role. But we would say that, you know, having an institutional investor experienced as a lead plaintiff under the PSLRA could serve the best interest of the class.

THE COURT: Yeah, and I understand that there's a preference under the statute for that, but the loss amount is pretty significantly different. But just to confirm, you don't have any issues as to the ability of either Mr. Konigsberg or Mr. Stephanson to satisfy the Rule 23 requirements?

MR. MCCONVILLE: We do not, Your Honor. We haven't raised any, nor do we have any.

THE COURT: Okay. Thank you. I don't think there are any -- I know counsel for Mr. Davoodi is on, but you're not seeking to be lead plaintiff. I don't know if you want to be heard.

MR. LINEHAN: Charles Linehan, Your Honor. I don't need to be heard.

THE COURT: Okay. I don't think -- I think that's all the plaintiffs, right? Sorry, all the -- all the -- yeah. Is that all the plaintiffs? Is there someone that I've missed?

MR. ABADOU: Your Honor, may I make one hearing point? This is -- I'm sorry.

THE COURT:  Hearing nothing else from the plaintiffs -- from any other plaintiffs, I don't think this is typical, but I'll just ask if counsel for Zeta would like to be heard.

MS. BEHRMAN:  Hi, Your Honor.  This is Megan Behrman from Latham & Watkins, counsel for Zeta.  We do not need to be heard.  We take no position on these motions.

THE COURT:  Yeah, that's what I figured. Okay.  Let me -- I hear Mr. -- I'm sorry.  Did someone just try to get in?

MS. BEHRMAN:  Oh, I just said thank you, though.

THE COURT:  Oh, okay.  I think I heard Mr.Abadou try to get back in, so I'll let you say -- make whatever point you want to make.

MR. ABADOU:  Thank you, Your Honor.  I appreciate being heard.  This is Mr. Abadou.

With respect to Mr. Stephanson, I wanted to maybe have the opportunity -- and I don't know where the Court is headed here -- but we did have an opposition to Mr. Stephanson.  We didn't include it in our brief when he effectively withdrew his motion.  It had to do with a series of errors in his trading data that were significant and goes to his

adequacy.

So if the Court were to consider Mr. Stephanson, we would ask for the opportunity to put in, you know, a three-page or two-page filing to address those concerns because they were significant.  But as a courtesy, we don't pile on to movants who withdraw and file non-ops --

THE COURT:  Fair enough.

MR. ABADOU:  -- because we don't want to burden the Court with argument that's unnecessary. But we did have some serious concerns about Mr. Stephanson's adequacy.  And in addition, you know, we're all here to try and figure out who's the most adequate plaintiff because it's in the best interest of the class.  And we think Mr. Stephanson has also demonstrated his inadequacy by not raising any arguments against the DART Trust.

I think Allegheny spoke up and said it has some concerns about the DART Trust.  Mr. Stephanson had an opportunity to raise these arguments, do the research, do the work on behalf of the class.  He -- he decided not to.  And we think that -- that -- that should -- that's something the Court, you know, should consider.

THE COURT:  One thing that I meant to ask

you about, Mr. Abadou, but I think I forgot, you raised some concerns with the specificity of -- or I -- I don't know if it's appropriate.  I don't know if it's more accurate to say the completeness or the specificity of what's stated in Mr. Daugherty's declaration, which Mr. Walker noted the ECF number 4.  I think it's 32-4.  What exactly are your concerns in that regard?

MR. ABADOU:  It provides little to no information about Mr. Daugherty's background or his wife's.  And I have it here in front of me.  It's paragraph 2.  It says that he's the settler and protector of the DART Trust and that he's been retired since 2009.  But again, we don't know where he lives.

Typically what happens in these cases, Your Honor, just this is kind of, you know, behind the curtain, is when these motions are filed, I can assure you, because there are many really solid plaintiff firms on the line with you right now.  The first thing people do is run background checks on all the movants.

And oftentimes we run background checks when we're retained by a client to make sure that they don't have any issues that might be to the

detriment of the class.  You don't want to put somebody forward who's going to cause the class problems and make it -- make life easy for defendants down the road.

THE COURT:  Okay.  But Mr. Abadou, I mean, you didn't do that for Mr. Daugherty, right?  I mean, you're not affirmatively putting forward -- I mean, I guess the issue I have is if -- I mean, are you arguing that this -- excuse me.

Mr. Abadou, are you arguing that this declaration is insufficient for the trust to make its prima facie case here?  Because my understanding of the way that this works is, you know, once a prima facie case is made, it's not enough to simply raise questions.  You actually have to rebut that prima facie showing.  So what exactly is your argument?

MR. ABADOU:  The argument is, and if you look at the cases that we cited, *Hexo*, *Diebold*, and *Gross vs. AT&T*, courts in the Southern District of New York realized that you need biographical information.  And we've not gotten that biographical information, which includes where somebody's from so that the movants on this phone call can do a background check into Mr. Daugherty to determine if

he has any criminal convictions, if he has any issues in his background that defendants will use and exploit to the detriment of the class at class certification.  We don't have that information.  I don't know where he's from.  I don't know his wife's name, where he lives.  And so we can't --

THE COURT:  Mr. Abadou, you're raising a lot of different -- you're throwing a lot of different things out there.  And, you know, I can understand, you know, for very simple things like the logistical challenges of litigation that, you know, if someone is abroad, that could prove, you know, challenging.  But, you know, you're raising a whole host of issues that you know about, or -- I'm sorry, I guess what I should say is you're speculating about a lot of problems, problems that might be there.  But I think, you know, my question is, you know, do you have any -- anything to substantiate, you know, or to make a showing that there is, in fact, a problem here?

If I agree that the trust has made a prima facie showing of adequacy here, maybe they haven't but --

MR. ABADOU:  I do --

THE COURT:  Go ahead.

MR. ABADOU:  I do not.  I do not.  The simple answer in this is I do not, Your Honor, but I cannot, because we don't have the biographical information that Judge Buchwald said was absolutely critical to provide in *Hexo*, and I won't go through the other cases.  But that's why courts require biographical information, so you can figure out if somebody's got an issue.  You know, the subject to unique defenses -- yeah, I'm sorry.  Thank you, Your Honor.

THE COURT:  Why don't I come back one more time to Mr. Walker on that point, and, you know, I don't even see in this declaration where Mr. Daugherty resides.

MR. WALKER:  Yes.  Thank you, Your Honor.  I mean, I would say two things.  One is the -- I think the reason the PSLRA requires, you know, proof is for exactly this.  It's one thing to sort of, you know, suggest maybe there's a criminal conviction or things of that nature, but that's not -- that's not bringing forward proof.

I take your point on where he resides.  I know that we've said that the trust itself is a Cook Islands Trust.  I'd be happy to -- I don't -- I don't have the answer off the top of my head,

although I'm trying to get it right now, but I'd be happy to put that in.  But I believe that Mr. Daugherty is located in the United States, but I want to be sure before I say exactly where.

THE COURT:  I mean, you know, I don't think there's a per se bar on someone from -- you know, someone who resides abroad necessarily from serving as the lead plaintiff.  But, you know, that could prove challenging in litigation if he's abroad, and it might counsel in favor of a different lead plaintiff if there are significant challenges with getting him here for appearances or discovery.  So not having that gives me some pause.

Go ahead.

MR. WALKER:  No, I was just going to say that I think the declaration itself makes clear that Mr. Daugherty understands the obligations of elite plaintiff.  That he submitted himself to the jurisdiction of the Court.  He understands and has said he'd make himself available.  You know, if you look at paragraph 9, he explains all the different roles.  In paragraph 7, he explains his commitment to the case itself.  And, you know, I know that Mr. Konigsberg, by the way, who is also located abroad, I know that he, you know, raises this

question.  But again, I think the declaration makes clear that, you know, Mr. Daugherty understands the obligations of a lead plaintiff, and he has been very responsive and very willing to do exactly that.

And, you know, again, there's not -- there's no proof.  You know, what the PSLRA requires is proof of inadequacy or a typicality.  And this is, you know, nothing but speculation about whether there might be an issue, whether there could be a problem.  That's not the proof that's required under the PSLRA.

THE COURT:  Proof once prima facie showing has been made.  And what I understand Mr. Abadou to be saying is that the absence of more biographical information about Mr. Daugherty means that you haven't made the prima facie showing on adequacy.

MR. WALKER:  Yeah, I mean, I think that --

THE COURT:  And he points me to the *Hexo* case.  And what's your response?

MR. WALKER:  I'd be happy to -- you know, I guess two responses.  One is, you know, the kind of declaration that we put in here at 32-4 is exactly the kind of declaration that's been accepted in other cases.  I'd be happy to put in a short, you know, supplement with the Court with examples of

cases where this has been found to be, you know, adequate and typical and not an issue. But second of all -- yeah, I mean, again, if it's important to the Court, I'd be happy to also put in, you know, some supplemental information. I don't think that's necessary. I think that this declaration is sufficient to meet the, you know, prima facie adequacy and typicality. I think we've, you know, cited some cases that say exactly that.

And, you know, again, if the Court is concerned, I'd be happy to put in additional information, but I don't think that it's inconsistent with the PSLRA for the information we provided to be found to be, you know, prima facie, adequate and typical.

THE COURT: Okay. Thank you very much. So, I appreciate your submissions and you all walking me through your respective positions today. You know, I had hoped to be able to resolve the competing motions today, but I think I need a little bit more time. And I know I had to move this conference a couple of times because of some challenges with my docket, so I appreciate your patience.

What I want to do is to try to either

resolve this quickly or if I need something, you know, additional from any of the movants to solicit that relatively quickly.  But I'll try to do either of those as soon as I can.

Now, I know that the statute requires me to consider the motions for lead counsel within 90 days of the notice being posted, but I just want to confirm that's for consideration of the motions, not actual appointment.  Not that I'm planning on dragging this out substantially longer, but do I have that right.

MR. ABADOU:  Your Honor, Ramzi Abadou here. Yeah, I think that's right, and I think everybody will agree with that.

THE COURT:  Okay.  Anyone disagree?

Going once.  Going twice.  Sold.  Okay. All right.

Well, I really appreciate your time and your attention.  I'm sorry that I'm not able to resolve the motions today during this conference, but I'll try to either do so, or if I need some additional information, ask for that relatively quickly.

Thank you very much for your time.

MR. ABADOU:  Thank you, Your Honor.

MR. WALKER:  Thank you, Your Honor.

MR. MCCONVILLE:  Thank you.

0o0

C E R T I F I C A T E


I, Adrienne M. Mignano, certify that the
foregoing transcript of proceedings in the case of
Davoodi v. Zeta Global Holdings Corp., Inc.
Docket #24CV8961 was prepared using digital
transcription software and is a true and accurate
record of the proceedings.


Signature    *Adrienne M. Mignano*
             ADRIENNE M. MIGNANO, RPR


Date:        February 21, 2025