**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| IN RE ZETA GLOBAL HOLDINGS CORPORATION SECURITIES LITIGATION | Case No. 1:24-cv-08961-DEH-SDA<br><br>**ORAL ARGUMENT REQUESTED** |
| --- | --- |

# DEFENDANTS ZETA GLOBAL HOLDINGS CORP., DAVID A. STEINBERG, CHRISTOPHER GREINER, NEEJ GORE, AND BENJAMIN HAYES'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS


# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................1

ARGUMENT ....................1

I. PLAINTIFFS FAIL TO PLEAD ANY FALSE STATEMENT OR OMISSION ....................1

A. Plaintiffs' Complaint Continues to Suffer from Pervasive Flaws ....................1

B. Statements About Zeta's "Opt-In" Dataset Were Not False ....................2

C. Zeta Does Not Operate Consent Farms ....................5

II. PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER ....................5

A. Plaintiffs' Miscellaneous Theories Do Not Show Recklessness ....................6

B. Sales by an Independent Trustee Do Not Support Motive ....................7

III. PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ....................8

IV. PLAINTIFFS FAIL TO PLEAD A SCHEME LIABILITY CLAIM ....................10

CONCLUSION ....................10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
663 F. Supp. 3d 334 (S.D.N.Y. 2023)........................................................................ 2

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022) .................................................................................... 5, 7

*Fila v. Pingtan Marine Enter. Ltd.*,
195 F. Supp. 3d 489 (S.D.N.Y. 2016)...................................................................... 10

*Freudenberg v. E*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010)........................................................................ 4

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011)..................................................................... 6, 7

*Gruber v. Gilbertson*,
2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018) ........................................................... 10

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004)........................................................................ 4

*In re Bemis Co. Sec. Litig.*,
512 F. Supp. 3d 518 (S.D.N.Y. 2021)........................................................................ 3

*In re Bristol-Myers Squibb Co. CVR Sec. Litig.*,
658 F. Supp. 3d 220 (S.D.N.Y. 2023)........................................................................ 6

*In re Cassava Scis. Inc. Sec. Litig.*,
2024 WL 4916373 (W.D. Tex. June 12, 2024) ......................................................... 10

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
2019 WL 5287980 (S.D.N.Y. Oct. 18, 2019)............................................................ 10

*In re DraftKings Inc. Sec. Litig.*,
650 F. Supp. 3d 120 (S.D.N.Y. 2023)..................................................................... 2, 5

*In re Farfetch Ltd. Sec. Litig.*,
2025 WL 2781679 (S.D.N.Y. Sept. 30, 2025)........................................................ 2, 3

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014).......................................................................... 9

*In re Renewable Energy Grp. Sec. Litig.*,
2022 WL 14206678 (2d Cir. Oct. 25, 2022) ........ 6

*In re Signet Jewelers Ltd. Sec. Litig.*,
2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) ........ 9

*In re UiPath, Inc. Sec. Litig.*,
2025 WL 2065093 (S.D.N.Y. July 23, 2025) ........ 6, 8, 9

*Krouner v. Am. Heritage Fund, Inc.*,
899 F. Supp. 142 (S.D.N.Y. 1995) ........ 3

*Long Miao v. Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020) ........ 5

*May v. Barclays*,
2025 WL 887300 (S.D.N.Y. Mar. 21, 2025) ........ 6

*New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*,
122 F.4th 28 (2d Cir. 2023) ........ 9

*Oklahoma Firefighters Pension & Ret. Sys. v. Musk*,
779 F. Supp. 3d 396 (S.D.N.Y. 2025) ........ 10

*Pitman v. Immunovant Inc.*,
2024 WL 964258 (E.D.N.Y. Feb. 25, 2024) ........ 7

*Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*,
2024 WL 5399664 (N.D. Cal. Sept. 18, 2024) ........ 2

*Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*,
89 F. Supp. 3d 602 (S.D.N.Y. 2015) ........ 7

*Police & Fire Ret. Sys. City of Detroit v. Argo Grp. Int'l Holdings, Ltd.*,
2024 WL 5089970 (S.D.N.Y. Dec. 12, 2024) ........ 4, 7

*Tanaskovic v. Realogy Holdings Corp.*,
2021 WL 211049 (D.N.J. Jan. 21, 2021) ........ 4

*Veal v. LendingClub Corp.*,
423 F. Supp. 3d 785 (N.D. Cal. 2019) ........ 3

*Welgus v. TriNet Grp., Inc.*,
2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ........ 3

## PRELIMINARY STATEMENT

In their Opposition (Dkt. 105, "Opp."), Plaintiffs try and fail to find a coherent theory of securities fraud. Plaintiffs rely upon the unsupported opinions of an insufficiently described "expert," abandon falsity allegations derived from FEs, invent "admissions" that were never made, and favor the financially motivated Culper Report over documents incorporated in the Complaint. None of this overcomes Zeta's consistent public definition of "opt-in" data or its unwavering insistence that it does not operate consent farms.

Plaintiffs' scienter allegations similarly fall flat. Their recklessness argument amounts to nothing other than the fact that Defendants did their jobs. And the tortured allegations regarding the Independent Trusts make little sense and do not refute Steinberg's lack of control over any of the transactions. Plaintiffs likewise fail to plead loss causation, because *none* of the allegedly corrective disclosures revealed any truth about the consent farm statements, and Plaintiffs cannot explain how a tweet of previously reported information was corrective. Plaintiffs' attempt to plead the existence of a "scheme" also fails. The puzzle-pled Complaint should be dismissed.

## ARGUMENT

### I. PLAINTIFFS FAIL TO PLEAD ANY FALSE STATEMENT OR OMISSION

#### A. Plaintiffs' Complaint Continues to Suffer from Pervasive Flaws

*First*, Plaintiffs argue they did not engage in puzzle pleading because they, without explanation, bolded language in lengthy block quotes. Opp. at 3. But the Opposition continues to hide the ball regarding what Plaintiffs actually allege is false and why. *Compare, e.g.*, Opp. at 3 (challenged statements are at ¶¶ 183-219) *with* Opp. at 8 (arguing statement in ¶ 166 is "plainly untrue"). For example, Plaintiffs now assert the statement "ArcaMax . . . is one of the largest publishers of opted-in newsletters" is false because "ArcaMax operated consent farms," Opp. at 9, but the Complaint quoted that statement in lengthy text that Plaintiffs alleged was false "because

. . . '240 million American individuals' did not opt-in," ¶¶ 189-91—i.e., "the same . . . generalized reasons" as other challenged statements related to the opt-in dataset. *In re Farfetch Ltd. Sec. Litig.*, 2025 WL 2781679, at *14 (S.D.N.Y. Sept. 30, 2025). Contrary to Plaintiffs' claims, Defendants did address that statement. Mot. at 8; Ex. 2. But if it "does not fit neatly" into the reasons identified for its falsity, Opp. at 9 n.6, it only underscores that the Complaint fails to "demonstrate with specificity why and how" each statement is false. *Farfetch*, 2025 WL 2781679, at *14.

*Second*, Plaintiffs continue to tout their anonymous "expert" but cannot cite a single case crediting the opinions of an unnamed expert where, as here, a complaint lacks particularized facts showing that the expert is "in the position" to opine reliably on the matters of which he claims knowledge. *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 154 (S.D.N.Y. 2023); Mot. at 6-8. Instead, the Opposition, like the Complaint, merely regurgitates a list of generic qualifications and does not explain how the "expert" used reliable methods and data—or even what his analysis entailed. Opp. at 4-5; Mot. at 6-8, 13. While Plaintiffs hint that their "expert's" web surfing required "sufficient technical know-how and access to the named tools," Opp. at 4-5, the Complaint neither describes that "know-how" nor names all the "tools" he (or his "analytics firm") employed. That is insufficient. *Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, 2024 WL 5399664, at *17 (N.D. Cal. Sept. 18, 2024) (disregarding expert allegations that omitted "how the analysis was performed" and "the data" relied upon); *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 663 F. Supp. 3d 334, 372–73 (S.D.N.Y. 2023) (rejecting anonymous expert lacking identity, qualifications, or methodology). These flaws render all the opinions ascribed to Plaintiffs' "expert" suspect, whether about "leaky forms," "sham jobs," or any other allegation.

**B. Statements About Zeta's "Opt-In" Dataset Were Not False**

Plaintiffs' allegations that Defendants lied by disclosing that Zeta had 240+ million individuals in its opt-in dataset rest entirely upon (1) Plaintiffs misquoting a clear reference to a

*subset* of opt-in individuals; (2) Zeta's removal of the term "opt-in" from its 2024 10-K; and (3) the description of that terminology change as intended to prevent misinterpretations. Opp. at 5-9. Zeta's statements were true, and nothing in the Opposition saves Plaintiffs' conclusory allegations.

*First*, Plaintiffs' insistence that Defendants "admitted" Zeta only had 110 million opt-in users, *id.* at 7, is fictitious. Mot. at 10. Tellingly, Plaintiffs all but ignore the slide accompanying the supposed "admission" because it *affirms* Zeta had 245 million users in its opt-in dataset, a *subset* of whom consented to receive *emails*. Ex. 3 at 29; Mot. at 4-5, 10; *see* Opp. at 7 n.5.[1] And Zeta disclosed that it defined "opt-in" to include users who consented to digital marketing. Ex. 5 at 15 (opt-in gathered when users "register or interact with our platform"); *see Farfetch*, 2025 WL 2781679, at *18 (consistent disclosures "undermine" falsity). Plaintiffs quibble that Zeta did not "*define* opt-in" but just disclosed "*when*" it collected data. Opp. at 7 (emphases in original). That is a distinction without a difference; the context clearly refers to *how* Zeta collected opt-in data. Ex. 5. Zeta's privacy policy also states that data is collected "when an individual consents to have their data used for marketing purposes," consistent with the 10-K definition of opt-in. ¶ 268.

*Second*, the removal of the "opt-in" descriptor from Zeta's 2024 10-K does not support the falsity of the dataset statements. *See Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *8 (N.D. Cal. Dec. 18, 2017) ("removal of language from an SEC filing" is not "a tacit admission"); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 816 (N.D. Cal. 2019) (similar); *Krouner v. Am. Heritage Fund, Inc.*, 899 F. Supp. 142, 147 (S.D.N.Y. 1995) (revisions to prospectus not considered). The precedent Plaintiffs cite, Opp. at 6, involved *affirmative* admissions, not the revision of disclosure language. *See Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171,

---

[1] Plaintiffs now suggest that Zeta was misleading *by omission*. Opp. at 7-8. They may not amend their Complaint in a brief. *In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 541 (S.D.N.Y. 2021).

183 (S.D.N.Y. 2010) (admission "in response to an SEC inquiry"); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004) (financial restatement).

*Third*, Plaintiffs mischaracterize Zeta's March 10 statement, which in reality supports the challenged statements' truth. Opp. at 5. Weeks after issuing the 2024 10-K, Zeta provided a statement regarding Zeta's terminology change. ¶ 345. Zeta explained (again) that its dataset included 245 million individuals who opted-in to digital marketing by agreeing to terms of service and 110 million who had consented to emails. Ex. 9. The statement further explained that Zeta "refined [its] terminology to better reflect the evolving nature of data permissions" and "ensure[] [its] terminology aligns with the nature of permissions across [its] data assets to prevent misinterpretations." *Id.*; ¶ 345. Plaintiffs attribute great weight to "misinterpretations," claiming that word somehow amounted to an admission of fraud. Opp. at 5-6. Not so. Zeta issued this statement following a short-seller attack that was *specifically designed* to create misimpressions in the market. Taking steps to undo Culper's false accusations and prevent additional misinterpretations is a far cry from admitting that prior statements were false or misleading. *See Police & Fire Ret. Sys. City of Detroit v. Argo Grp. Int'l Holdings, Ltd.*, 2024 WL 5089970, at *10 (S.D.N.Y. Dec. 12, 2024) (company's "steps to improve its future underwriting . . . were not an admission that its previous underwriting policies were inadequate"); *Tanaskovic v. Realogy Holdings Corp.*, 2021 WL 211049, at *13 (D.N.J. Jan. 21, 2021) (acknowledging that "Company's compensation structure was complex and inconsistent" was not an admission of fraud).

*Finally*, allegations supplied by the anonymous expert and the Culper Report cannot salvage Plaintiffs' claims—for the reasons above and because there are no allegations that the websites identified were even included in the 240+ million opt-in users. Opp. at 8; Mot. at 10.

### C. Zeta Does Not Operate Consent Farms

Plaintiffs' challenge to Zeta's statements denying the operation of consent farms and explaining that opt-in users receive value hinges solely on two sources: the financially interested Culper Report and the anonymous "expert." Opp. at 9-11. Neither passes muster. Mot. at 11.

Plaintiffs attempt to rehabilitate the Culper Report, not by citing to precedent, but to a law professor's opinion that short sellers play a "vital role" in the market. Opp. at 9-10. But the *law* of this Court requires that allegations made by short sellers "with an economic interest in driving down the company's stock price" be "considered with caution." *DraftKings*, 650 F. Supp. 3d at 154. Indeed, in the only case Plaintiffs cite, *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774 (S.D.N.Y. 2020), the court dismissed the complaint because it "relies exclusively on general statements credited to anonymous interviewees in a secondhand short-seller report" with "demonstrable errors." *Id.* at 804. Plaintiffs make no attempt to distinguish the equally troubling Culper Report from the short-seller report in *Long Miao*. *See* Opp. at 10. As explained, the Culper Report contains "all the methodological shortcomings" and "indicia of unreliability" that cause courts to discredit short sellers. *DraftKings*, 650 F. Supp. 3d at 155; Mot. at 11-13.

Plaintiffs' attempt to rely on their "expert" by claiming he "corroborated" the Culper Report, Opp. at 10, again faces the fatal problem that an anonymous expert's opinions "cannot substitute for facts under the PSLRA." *Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 354 (2d Cir. 2022) ("*BMS*"). No allegation sets forth how the purported consent farms are connected to Zeta, let alone facts to corroborate Culper. ¶¶ 135-39. Zeta has always denied operating consent farms, and Plaintiffs' supposition does not change that.

## II. PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER

Plaintiffs concede they allege no motive for any Defendant except Steinberg. Opp. at 17. And their other hodgepodge theories do not support a state of mind "approximating actual intent"

to defraud. *In re UiPath, Inc. Sec. Litig.*, 2025 WL 2065093, at *13 (S.D.N.Y. July 23, 2025).

**A. Plaintiffs' Miscellaneous Theories Do Not Show Recklessness**

Plaintiffs levy a series of arguments that Defendants "cannot credibly claim ignorance" about Zeta's data collection practices, each of which distills down to the premise that Defendants were attentive to their jobs. Opp. at 11-16. That is insufficient to plead scienter. Mot. at 19-22.

*First*, Plaintiffs point to the unsurprising fact that Zeta tracked opt-in data, Opp. at 12, but "there is a key difference between" Defendants' "alleged awareness" about Zeta's dataset and awareness that the data was not opt-in under any definition. *May v. Barclays*, 2025 WL 887300, at *25 (S.D.N.Y. Mar. 21, 2025) ("Plaintiffs allege only the former, whereas the latter would be required to establish conscious misbehavior or recklessness."). *Second*, Plaintiffs' argument that Defendants acted with scienter because the Individual Defendants had roles in data collection or spoke with knowledge about it, Opp. at 13, amounts to exactly the kind of "generalized allegations predicated on what the Defendants must have known by virtue of their responsibilities" that do not suffice. *In re Renewable Energy Grp. Sec. Litig.*, 2022 WL 14206678, at *3 (2d Cir. Oct. 25, 2022). *Third*, Plaintiffs' assertion that Zeta was "prepared" to answer analyst questions, Opp. at 14, simply repackages the same argument; but that Defendants were generally familiar with the data Zeta collected does not suggest that they spoke with fraudulent intent absent allegations of "*specific* contradictory information" available "*at the time*" of the statements. *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 588 (S.D.N.Y. 2011) (emphases in original). Indeed, when Defendants answered analyst questions about "operating consent farms," they denied doing so. Opp. at 14. Plaintiffs' "circular argument"—that these denials themselves support scienter—fails. *In re Bristol-Myers Squibb Co. CVR Sec. Litig.*, 658 F. Supp. 3d 220, 233 n.6 (S.D.N.Y. 2023).

Plaintiffs' additional argument that Defendants made a "series of revealing admissions" is similarly circular (and false). Opp. at 13-14. Far from making admissions, Defendants have

always categorically denied using consent farms. That Zeta strove to improve clarity in response to a short-seller attack also is not an admission of prior fraud. *BMS*, 28 F.4th at 356 (amendment of clinical trial description to "accurately align[] that description with" new guidance "was not an admission that the original, less-specific description was incorrect").

Further, Plaintiffs concede the FEs never interacted with *any* Individual Defendant, Opp. at 16, and no pled facts suggest it would be "highly probable" the FEs were "well-positioned to attest to the participation of the individual defendants" in the alleged fraud. *Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 616 (S.D.N.Y. 2015). None even had a role in data collection—their statements about the segment of Zeta's business at issue here were at best secondhand. Mot. at 18-19; *see Argo*, 2024 WL 5089970, at *13 (rejecting FE allegations where none "had direct contact with any defendants" or even "work[ed] in a department with insight into" the subject of the statements); *Glaser*, 772 F. Supp. 2d at 594 ("the law is abundantly clear" that allegations an individual "would have known" a fact "are insufficient").

Finally, Plaintiffs' resort to the dubious core operations doctrine also fails because the Opposition does not identify any "specific instances" where Defendants received contrary facts. *Pitman v. Immunovant Inc.*, 2024 WL 964258, at *20 (E.D.N.Y. Feb. 25, 2024); Mot. at 21.

**B. Sales by an Independent Trustee Do Not Support Motive**

Plaintiffs must rely on sales by Independent Trusts to construct a purported motive for Steinberg. But while Plaintiffs assert Defendants "admit" that Steinberg "controlled" the Independent Trusts, Opp. at 17 n.15, this fundamentally misunderstands trusts—Steinberg *settled* (i.e., funded) certain of the trusts, but they were managed by an independent trustee. *See* Ex. 12; Mot. at 16. Plaintiffs point to no authority supporting the conclusion that the alleged "connections" between the Independent Trusts and Steinberg—mailing addresses and an affiliated attorney—establish that the independent trustees were somehow under Steinberg's control. Opp. at 17. And

Plaintiffs' assertions that the timing of the Independent Trusts' sales relative to the class period was suspicious fail because Plaintiffs set that period arbitrarily; it has no significance outside of the Complaint. Mot. at 17. Finally, Plaintiffs speculate that the timing reflects an attempt to circumvent the SEC's ninety-day cooling off period. Opp. at 18. But they admit the ninety-day rule does not apply to the Independent Trusts, ¶ 241, so the mere fact that the trades may have occurred within a time period with no significance to the trusts is unremarkable, and there are no allegations that hypothetical trades made *after* the ninety-day window would have been less favorable.

## III. PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

Plaintiffs also have not pled loss causation. Critically, Plaintiffs concede the Culper Report could not logically have corrected statements that followed it. Opp. at 22. And because Plaintiffs have not alleged a single disclosure that addressed Zeta's alleged operation of consent farms *and* occurred after Defendants denied those allegations, Mot. at 22-23, "[t]he market cannot react to what it never learns, and without such a reaction, Plaintiffs' loss cannot be causally connected to the alleged fraud." *UiPath,* 2025 WL 2065093, at *20. Plaintiffs claim a "rock solid" connection between the statements and the later disclosures, Opp. at 22, but that connection turns to sand under scrutiny because *none* of the disclosures even mentions consent farms, let alone "reveal[s] at least part of the falsity" of Defendants' denials. *UiPath*, 2025 WL 2065093, at *18. Plaintiffs claim the alleged disclosures provided "clarity" about "data practices" *generally*, and that general "context" somehow undermined Zeta's unequivocal and specific denials. Opp. at 22. But "[t]his disparity in specificity dooms Plaintiffs' claims," because at no point in these general comments did any Defendant ever "suggest—either explicitly or implicitly" that the prior denials were "materially different than what [Defendants] represented." *UiPath*, 2025 WL 2065093, at *19.

Plaintiffs thus argue that the alleged corrective disclosures in the Complaint are "partial"

disclosures, and that Defendants' contemporaneous denials merely "blunted" the truth. Opp. at 22-23. But Plaintiffs miss the point; even a partial disclosure must have a "nexus" to the fraud, and *some* truth must be revealed before the import of that truth can be blunted. *UiPath*, 2025 WL 2065093, at *1. There is no such nexus here. The alleged corrective disclosures "reflected no contradiction, no correction, and no concession of past inaccuracy" with respect to consent farms, so Plaintiffs' loss causation theory must fail. *Id.* at *19.

Further, the Opposition fails to identify any new information revealed on March 10. The Capitol Forum article was published on March 7, not March 10. Ex. 11. Plaintiffs claim this fact is no matter because the article was "*only privately available* to Capitol Forum subscribers" until a tweet somehow transformed it from private to public. Opp. at 21 (emphasis in original). But all that tweet did was *link* to the March 7 article, which remained behind a paywall. Exs. 11, 13-14.[2] The article was no more public on March 10 than it was on March 7. And it is absurd to suggest the market would not rapidly digest information in a paywalled article. If that were true, information published in the many respected news outlets that make their content "only privately available" to subscribers, Opp. at 21, would not affect a company's stock price. But case law and common sense say otherwise. *E.g.*, *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28, 54 (2d Cir. 2023) (Wall Street Journal supplied corrective disclosure); *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *18 (S.D.N.Y. Nov. 26, 2018) (Washington Post).

As for the March 10 Zeta statement, Ex. 9, Plaintiffs still fail to identify any "then-undisclosed fact" about the alleged fraud "revealed" in that half-page, which merely discussed the

---

[2] Clicking on the link goes to a "Subscriber Login." Ex. 14. And the Capitol Forum website *still* restricts the article to "subscribers." Ex. 13; *see In re UBS Auction Rate Sec. Litig.*, 2010 WL 2541166, at *15 (S.D.N.Y. June 10, 2010) (taking judicial notice of the contents of a website).

weeks-old 10-K. *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 575 (S.D.N.Y. 2014). Plaintiffs' cited cases are inapposite because they involved the disclosure of *new* information. *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2019 WL 5287980, at *28 (S.D.N.Y. Oct. 18, 2019) (disclosure included previously unreported facts); *In re Cassava Scis. Inc. Sec. Litig.*, 2024 WL 4916373, at *4 (W.D. Tex. June 12, 2024) (disclosure discussed new evidence of misconduct). All Plaintiffs can muster is that the statement "revealed" Zeta sought to "prevent misinterpretations," Opp. at 22, but that a Company strove for "accura[cy]" in its SEC filings can hardly be said to be new information when, indeed, the law requires as much. *Fila v. Pingtan Marine Enter. Ltd.*, 195 F. Supp. 3d 489, 497 (S.D.N.Y. 2016) (article that "interpret[ed] the SEC filings" not new).

## IV. PLAINTIFFS FAIL TO PLEAD A SCHEME LIABILITY CLAIM

Plaintiffs argue they have identified the required something "extra" to plead scheme liability in what they characterize as "secret financial stock transactions" by the Independent Trusts. Opp. at 24. But fatally, these transactions were not secret at all. As is evident from the Complaint itself, Steinberg's Forms 4 disclosed his gifts to the trusts, and the Independent Trusts' intended trades were documented with the SEC on Forms 144. Ex. 12; ¶ 227; Mot. at 25. By contrast, Plaintiffs' cited cases involved active concealment. *See Oklahoma Firefighters Pension & Ret. Sys. v. Musk*, 779 F. Supp. 3d 396, 420 (S.D.N.Y. 2025) (defendants "sought to suppress inflation of the stock price, thereby avoiding detection"); *Gruber v. Gilbertson*, 2018 WL 1418188, at *14 (S.D.N.Y. Mar. 20, 2018) (defendants directed friends and family to purchase stock "at inflated prices" while they "operated from the shadows"). This transparency also undermines Plaintiffs' loss causation allegations, as Steinberg's "bullish stance" on the stock, Opp. at 24-25, was not contradicted by the public sales over which he exercised no control.

## CONCLUSION

The Complaint should be dismissed with prejudice.

Dated: October 9, 2025

Respectfully submitted,

*/s/ Colleen C. Smith*

Colleen C. Smith (admitted *pro hac vice*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
Email: colleen.smith@lw.com

Megan A. Behrman
Thomas J. Giblin
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: megan.behrman@lw.com
thomas.giblin@lw.com

*Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE**

  I, Colleen C. Smith, an attorney duly admitted *pro hac vice* to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York and Rule 4(c) of Judge Dale E. Ho's Individual Rules and Practices in Civil Cases, that the foregoing Memorandum of Law was prepared using Microsoft Word, contains 3,378 words, and does not exceed ten pages. In making this calculation, I have relied on the word and page counts of the word-processing program used to prepare the document.

Dated: October 9, 2025

                 */s/ Colleen C. Smith*
                 Colleen C. Smith