**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ZETA GLOBAL HOLDINGS CORPORATION SECURITIES LITIGATION | Case No. 1:24-cv-8961-DEH<br><br>**STIPULATED DISCOVERY PROTOCOL REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI PROTOCOL")** |

This Stipulated Discovery Protocol Regarding Production of Electronically Stored Information ("ESI Protocol") shall govern the Parties in the above-captioned case (the "Litigation").

Nothing in this ESI Protocol shall be construed to affect the admissibility of discoverable information. Pursuant to the terms of this ESI Protocol, information regarding search process and ESI practices may be disclosed, but compliance with this ESI Protocol does not constitute a waiver by any Party, of any objection to the production of particular ESI as irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party.

## I. GENERAL PROVISIONS

**A. Applicability:** This ESI Protocol will govern all information produced, given, or exchanged by and among the Parties in the Litigation. To the extent that a Party collected and processed documents prior to the Parties' agreement to this ESI Protocol, and production of such documents cannot be made in accordance with the terms of this ESI Protocol, the Parties will meet and confer if the other Party raises questions or concerns about the format of that production after receiving it.

**B. Deadlines:** References to schedules and deadlines in this ESI Protocol shall comply with Fed. R. Civ. P. 6 with respect to computing deadlines.

**C. Authenticity and Admissibility:** Nothing in this ESI Protocol shall be construed to affect the authenticity or admissibility of any ESI. All objections to the authenticity or admissibility of any ESI are preserved and may be asserted at any time.

**D. Claims of Privilege:** A Party's compliance with this ESI Protocol will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection. All objections to the production of documents or information based on a claim of privilege or other protection are expressly preserved.

**E. Confidential Information:** Nothing herein shall contradict the Parties' rights and obligations with respect to any Confidential Discovery Material, as that term is defined under the Parties' Stipulated Protective Order ("Stipulated Protective Order").

## II. GENERAL PRODUCTION FORMAT PROTOCOLS

**A. TIFFs:** Except for structured data, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 600 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that image, pursuant to ¶ II(D). Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a Producing Party's vendor (i.e., portrait to portrait and landscape to landscape). Hidden content, tracked changes, edits, comments, notes, and other similar information that is viewable within the native file and not subject to claims of privilege or the work product doctrine, shall, to the extent reasonably practicable, also be imaged so that this information is captured on the produced image file. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render

in TIFF format, may be produced in their native format along with a placeholder TIFF image stating "Document Produced in Native Format," (*see* ¶ II.C. below regarding native production format requirements) unless such documents require redactions, in which case the documents will be produced in the appropriate format to accommodate the application of redactions. A Producing Party retains the option to produce ESI in alternative formats if so agreed to by the Requesting Party, which may include native format, or a combination of native and TIFF formats.

**B. Text Files:** Each ESI item produced under this ESI Protocol shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

1. **Optical Character Recognition ("OCR"):** A Producing Party will scan and OCR paper documents. Where OCR is used, the Parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. Even if OCR is used by a Producing Party, however, the Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.

2. **ESI:** Non-redacted emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available and where not subject to claims of privilege or the work product doctrine. OCR text files shall be provided for ESI that does not contain extractable text and for ESI produced with redactions.

**C. Production of Native Items:** The Parties agree that ESI shall be produced as TIFFs with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix 1 hereto. The exception to this rule shall be spreadsheet-application files (e.g.,

MS Excel), presentation files (e.g., MS PowerPoint), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g.,.wav,.mpeg, and.avi), for which all ESI items shall be produced in native format, unless the file contains redactions. In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production. For documents produced in native format pursuant to this provision, a single-page placeholder TIFF image marked with the Bates production number and confidentiality designation shall be produced with the phrase "Document Produced in Native Format." The corresponding load file shall include NativeFileLink information for each native file that is produced. The Parties agree to meet and confer to the extent that there is data in database application files, such as SQL and SAP, to determine the best reasonable form of production of usable data. Through the pendency of the Litigation, the Producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

**D. Bates Numbering:**

**1.** All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (at least nine-digits and 0-padded) across the entire production; (3) be sequential within a given document; and (4) identify the Producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

**2.** If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in cover letter or production log accompanying the production.

**3.** The Producing Party will brand all TIFF images in a manner that does not obliterate or obscure any part of the underlying images.

**4.** Documents produced in native format shall be assigned a Bates number.

**E.** **Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable and consecutively Bates numbered.

F. **Family Members:** In the interest of keeping document families together and avoiding potential issues with authenticity and admissibility, if a non-responsive parent document has a responsive attachment, or a responsive parent document has one or more non-responsive attachment(s), the Producing Party will produce the whole family. The attachments will be produced sequentially after the parent communication.

G. **Hyperlinked Documents:** The Parties understand that, to the extent they exist, hyperlinked documents will be collected and produced in this Action (subject to a Party's generally applicable determination that a document is responsive, not privileged, and not otherwise subject to an objection). To the extent technologically feasible, reasonable, and not unduly burdensome, the Producing Party shall undertake reasonable and proportionate efforts to identify, collect and produce Modern/Linked Attachments embedded via hyperlink in Emails and Instant Messages (e.g., Modern/Linked Attachments sent via or stored in Google Drive), provided the document family contains a responsive document. To the extent technologically feasible, reasonable, and not unduly burdensome, the Producing Party shall also undertake reasonable and proportionate

efforts to produce metadata relating the Modern/Linked Attachment with the Email or Instant Message in which it was sent. The Parties will work collaboratively to come to a common understanding as to the scope of the collection, review, and production of Modern/Linked Attachments, including what is technologically feasible, reasonable, and not unduly burdensome (e.g., what versions of Modern/Linked Attachments are technologically feasible, reasonable, and not unduly burdensome to collect and produce, what metadata fields are capable of being extracted by the party's collection and processing tools, and the technical feasibility of relating the Modern/Linked Attachment with the Email or Instant Message in which it was sent), and any related issues that may arise. To the extent the Parties are not able to come to an agreement, any disputes will be promptly raised with the Court.

**H. Load Files:** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available, and to the extent not subject to a claim of privilege or work product protection, and to the extent they exist. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production.

**I. Color:** Documents or ESI containing color need not be produced initially in color. However, if any original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the Requesting Party may request that the document or ESI item be produced in its original colors. For such documents, the Requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall

be made in single-page JPEG format (600 DPI). All requirements for productions stated in this ESI Protocol regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Requests that a document be produced in color for the reasons set forth in this paragraph will not be unreasonably denied by the Producing Party. If a Producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

**J. Confidentiality Designations:** Any confidentiality designation shall be branded on the document's image in a manner that does not obliterate or obscure any part of the underlying images. Failure to comply with the procedures set forth in this ESI Protocol or the Stipulated Protective Order shall not waive any protection or confidential treatment.

**K. Production Media & Protocol:** A Producing Party may produce documents via email or via file-sharing service, including any network-based secure file transfer mechanism or FTP protocol. A Producing Party may also produce documents on readily accessible computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted or password protected, and the Producing Party will provide a decryption key or password to the Requesting Party in a communication separate from the production itself. Each piece of Production Media will be assigned a production number or other unique identifying label corresponding to the data of the production of documents on the Production Media, as well as the sequence of the material in that production. For example, if the production comprises document images on three DVDs, the Producing Party may label each DVD in the following manner: "[PARTY] Production September 1, 2026-001," "[PARTY] Production September 1, 2026-002," and "[PARTY] Production September 1, 2026-003." Where the Production Media used is a CD-ROM, DVD,

external hard drive (with standard PC compatible interface), or USB drive, such Production Media must be sent no slower than overnight delivery via FedEx, UPS, or USPS. Each item of Production Media (or in the case of productions made via FTP link, each production transmittal letter) shall include: (1) text referencing that the production is made in connection with the above-captioned action, (2) the production date, and (3) the Bates number range of the materials contained on such Production Media item. Any replacement Production Media will cross-reference the original Production Media and clearly identify that it is a replacement and cross-reference the Bates number range that is being replaced.

**L. Previously Produced Documents:**

**1. From this Action:** If a Party must re-produce documents previously produced in this action—for example, if the Producing Party discovers the documents should be produced with more or fewer redactions—the Producing Party must provide an overlay load file and a list of the Bates numbers of the documents being reproduced.

**2. From a Prior Action:** To the extent a Producing Party produces documents that were previously produced in an action different from this Action, those previously produced documents need not be reprocessed so long as the documents are produced in a reasonably usable form and need not be assigned new Bates numbers as described in ¶ II.D., so long as the prior Bates prefix is unique and not repeated in this Litigation. The Parties shall meet and confer if the Requesting Party raises questions or concerns about the format of any such production after receiving it. For the avoidance of doubt, if previously produced documents were not assigned Bates numbers with unique prefixes, a Producing Party must assign the previously produced documents Bates numbers as described in ¶ II.D.

## III. PAPER DOCUMENT PRODUCTION PROTOCOLS

**A. Scanning:** A Producing Party shall OCR paper documents.

**B. Coding Fields:** The following information (to the extent reasonably practicable) shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, and (e) CustodianAll.

**C. File/Binder Structures:**

1. **Unitization:** Where the documents were organized into groups, such as folders, clipped bundles, and binders, this structure shall be maintained and provided in the load file to the extent reasonably practicable.

2. **Identification:** Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping but need not be repeated for each document within the grouping.

## IV. ESI METADATA FORMAT AND PROCESSING ISSUES

**A. System Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files by agreement of the Parties.

**B. Metadata Fields and Processing:**

1. **Date and Time:** No Party shall modify the date or time as contained in any original ESI.

2. **Time Zone:** To the extent reasonably practicable, ESI items shall be processed and standardized to the Coordinated Universal (UTC) time zone, except to the extent ESI items have already been processed, which will not require standardization.

**3.** **Auto Date/Time Stamps:** To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

**4.** Except as otherwise set forth in this ESI Protocol, and to the extent not covered by claims of privilege or the work product doctrine, ESI files shall be produced with at least each of the data fields set forth in Appendix 1 that can be reasonably extracted from a document.

**5.** The Parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, and (e) CustodianAll, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

**C.** **Redaction:**

**1.** The Parties agree that, where ESI items need to be redacted, they shall be produced solely in TIFF format with each redaction clearly indicated, except in the case of personal database files (e.g., MS Access), which shall be governed by ¶ II(C), *supra*. Any metadata fields reasonably available and unnecessary to protect the privilege protected by the redaction shall be provided. In some cases, MS Excel documents that need to be redacted may be redacted in native format if reasonably practicable; otherwise they will be produced in TIFF format.

**2.** If the items redacted and partially withheld from production are Excel-type spreadsheets as addressed in ¶ II(C), *supra*, and the native items are also withheld, to the extent reasonably practicable, each entire ESI item should be produced in

TIFF format, including all unprivileged pages, hidden fields, and other information that does not print when opened as last saved by the custodian or end-user. For PowerPoint-type presentation decks, this shall include, but is not limited to, any speaker notes. For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values, annotations, and notes. If the Requesting Party believes in good faith that any spreadsheets produced only as TIFF images are formatted so as to be illegible, then the Requesting Party may request that the Producing Party reproduce that spreadsheet as a TIFF image that is formatted so as to be legible, or in some other reasonable format that allows the Requesting Party to read any unredacted content.

**3.** If the items redacted and partially withheld from production are audio/visual files, the Producing Party shall, to the extent reasonably practicable, provide the unredacted portions of the content. If the content is a voice recording, the Parties shall meet and confer to discuss the appropriate manner for the Producing Party to produce the unredacted portion of the content.

**D. Email Collection and Processing:**

**1. Email Domains:** To the extent reasonably practicable, excluded from any ESI search process shall be uniquely identifiable categories of documents, such as emails from domains typically associated with junk email.

**2. De-duplication:** A Producing Party may de-duplicate any file globally (i.e., across Document Custodians). The Producing Party shall identify in the CustodianAll field the names of all custodians who were in possession of the deduplicated document. In the event of rolling productions of documents or ESI

items, the Producing Party will, as needed, supplement the overlay load files with updated CustodianAll. Removal of near-duplicate documents is not acceptable.

**3.** Duplicate electronic documents shall be identified by a commercially accepted industry standard (e.g., MDS or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. The Producing Party shall produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable. The Producing Party is not obligated to extract or produce entirely duplicate ESI documents. Any other methodology for identification of duplicates, including email field selection for hash value creation, must be discussed with the Requesting Party and approved in writing before implementation.

**4.** Duplicate messaging files shall be identified by a commercially accepted industry standard (e.g., MDS hash values) for the email family, which includes the parent and email attachments. Duplicate messaging materials will be identified at a family level, including message and attachment(s). Email families bearing an identical value are considered a duplicate group. The Producing Party shall produce only one document image or native file for duplicate emails within the duplicate group to the extent practicable.

**E.** **Zero-byte Files:** The Producing Party shall filter out documents identified as being zero-bytes in size that do not contain responsive information. If the Requesting Party in good faith believes that a zero-byte file was withheld from production and contains responsive information, the Requesting Party may request that the Producing Party produce the zero-byte file and the Parties will meet and confer.

**F. Microsoft "Auto" Feature:** To the extent reasonably practicable and technologically possible for a Producing Party's vendor, Microsoft Excel (.xlsx) and Microsoft PowerPoint (.pptx) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business.

**G. Hidden Text:** ESI items processed after the execution date of this ESI Protocol shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

**H. Embedded Objects:** To the extent reasonably possible, embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field. Non-substantive automatically generated embedded files, such as logos, non-substantive formatting files (e.g., .Ole or .dll files), zero-byte files, widgets, or confidentiality legends, need not be produced as separate attachments.

**I. Compressed Files:** Compression file types (i.e.,.CAB,.GZ,.TAR,.7z, and.ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

**J. Password-Protected, Encrypted, or Proprietary-Software Files:** If a Requesting Party identifies a password-protected or encrypted ESI item that the Requesting Party believes, in good faith, needs to be reviewed, the Requesting Party may request that the Producing Party take reasonable steps to break the password protection. In the event the document cannot be accessed after such reasonable efforts have been made, the Producing Party shall advise the Requesting

Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

## V. PARAMETERS FOR CULLING AND REVIEWING ESI

### A. General Provisions:

1. **Targeted Collections:** Only documents a Producing Party intends to subject to electronic searching parameters should be included in the data set against which search terms are tested.

2. **Meet and Confer:** A Requesting or Producing Party may, in good faith, seek to expand or contract the scope of the search. Where such a request is made, the Parties will meet and confer and attempt in good faith to reach agreement as to the timing and conditions of such expansion or contraction.

3. **Non-Waiver:** The Parties' discussion of proposed search terms and appropriate Document Custodians and Non-Custodial document sources does not preclude a Party from requesting additional search terms pursuant to the terms of this ESI Protocol as discovery and the Litigation progress nor does it preclude a Party from objecting to any such additional search terms requested.

### B. Document Custodians:

**1.** Each Producing Party will identify in good faith an initial list of Document Custodians and Non-Custodial document sources which the Producing Party believes are likely to contain information responsive to one or more Document Requests for which the Producing Party has agreed to produce ESI. After receipt of this list, the Requesting Party may propose to the Producing Party additional or alternative Document Custodians or Non-Custodial document sources it reasonably believes contain information that would be responsive to one or more Document

Requests for which the Producing Party has agreed to produce ESI. The Parties then will meet and confer in good faith to resolve any disputes over the identification or number of Document Custodians. Nothing in this paragraph prevents a Requesting Party from subsequently proposing additional or alternative Document Custodians or Non-Custodial document sources as discovery progresses.

C. **Non-Custodial Documents and ESI:** Documents or ESI that (i) exist in Non-Custodial document sources identified by the Producing Party as likely to contain information responsive to one or more Document Requests for which the Producing Party has agreed to provide ESI, as set forth in ¶ V(B)(1), *supra*, and (ii) are responsive to one or more Document Requests shall be produced to the extent reasonably practicable, without regard to whether such documents or ESI would be captured by any search method described below or developed in accordance with this Order, unless the Producing Party has asserted an objection to producing such documents or ESI or if the Producing Party believes such documents or ESI implicate one or more privileges or protections (in the latter case, such documents shall be logged on a privilege log as set forth in ¶ VII, below).

D. **Custodial Cellphone, Mobile Device & Personal Communications Data:**

**1.** Upon a good faith request relating to any particular Document Custodian, the Producing Party agrees to take reasonable steps to identify whether any unique responsive communications are located on any cellphones or mobile devices in the possession, custody, or control of the Producing Party, and to produce those unique communications, if any, including but not limited to responsive cell phone voicemails, call logs, text messages, and/or iMessages. The Parties agree to confer in good faith regarding the parameters of any potential review and/or production of cellphone data.

## VI. SEARCH METHOD

**A. Search Terms:** Where the Parties agree that potentially responsive ESI shall be searched through the use of search terms, the Parties shall use the process identified below and shall meet and confer regarding any proposed deviation. The Receiving Party shall provide a list of proposed search terms to the Producing Party, which shall contain all search terms that it believes would lead to the identification of relevant documents, and the Parties shall thereafter meet and confer.

The Producing Party will provide a search term hit list or hit report after global de-duplication, including the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list, with and without families. The Parties shall then meet and confer regarding the proposed search terms.

**B. Technology-Assisted Review:** A Party must disclose in advance if it intends to use Technology Assisted Review ("TAR") to limit the volume of documents subject to review and production, and must meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies. A Party may not use TAR to exclude documents from manual review in conjunction with search terms unless use of TAR is disclosed in advance of the search term selection process. A Party may use TAR to sort documents for linear review without disclosure of that use.

## VII. CLAIMS OF PRIVILEGE AND REDACTIONS

**A. Production of Privilege Logs:** Except as provided otherwise below, for any document withheld in its entirety or produced but redacted, the Producing Party will produce privilege/redaction logs in MS Excel format that allows for text searching, sorting, and

organization of data, and shall be produced either: (a) in a cumulative manner, so that subsequent privilege log includes all privilege claims from prior logs; or (b) in installments using a consistent format so that the installments can be merged into a cumulative Excel spreadsheet by the Requesting Party.

**B. Exclusions from Logging Potentially Privileged Documents:** The following categories of documents do not need to be contained on a Producing Party's initial privilege log, unless good cause exists to require that a Party do so.

**1.** Communications seeking or receiving legal advice related to this Litigation (i.e., correspondence after the filing of the initial complaint in this securities class action on November 22, 2024), exclusively between a Producing Party and (i) its in-house or outside counsel to this Litigation, (ii) an agent of such outside counsel other than the Party, (iii) in-house or outside counsel to any other entity or individual named as a Defendant in this Litigation; (iv) any non-testifying experts, in connection with this Litigation; and/or (v) with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with this Litigation.

**2.** Work product created for this Litigation after the filing of the initial complaint in this securities class action on November 22, 2024, by or specifically at the direction of a Party's in-house counsel or outside counsel for this Litigation, an agent of outside counsel other than the Party, any non-testifying experts in connection with this Litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with this Litigation.[1]

---

[1] For the avoidance of doubt, nothing in this Section VII prevents a Party from challenging a claim of privilege or work product protection asserted over any communication made or work product created following the filing of the initial complaint on November 22, 2024 and/or for seeking the logging of any such communications where good cause exists to do so. The parties' agreement as to any default date cut-offs for initial privilege logging purposes

**C. Privilege Log Requirements:** Parties will provide a log of all documents withheld in full or in part (with redaction) on the basis of privilege, work product protection, or other privilege or protection, including regulatory privileges and/or other protections concerning the disclosure of confidential supervisory information or similar information ("privilege log"). An email thread for which a Party claims a privilege may not be logged in a single entry, but rather as a separate entry for each withheld or redacted email in the thread, in light of the use of email thread suppression for production. For electronic documents, an automated privilege log will be generated from the following metadata fields, to the extent they exist, as electronic metadata associated with the original electronic documents.

a. EMAIL SUBJECT
b. FILE NAME
c. AUTHOR
d. SENDER/FROM
e. RECIPIENTS/TO
f. CC
g. BCC
h. SENT DATE TIME
i. RECEIVED DATE TIME
j. FILE CREATED DATE TIME
k. FILE LAST MODIFIED DATE TIME
l. PRODBEG
m. PRODEND

With respect to the EMAIL SUBJECT or FILENAME fields, the Producing Party may substitute a description of the communication where the content of these fields may reveal privileged information, but must indicate that these fields have been revised.

---

does not constitute a waiver of their right to seek logging of materials post-dating the cut off for good cause, as set out in Section VII.B. Nor does this footnote alter Plaintiffs' position that the Parties need not produce or log documents or communications containing attorney privilege and/or work product material relating to the investigation and litigation of this action following case initiation.

Consistent with the Court's Individual Rules and Practices in Civil Cases § 4(k)(vi), the Producing Party must also provide a manual description sufficient to identify the document and basis for withholding.

The log shall also indicate whether a document has been fully withheld or produced with redactions.

The log shall contain an indication (e.g., with a ^ or * symbol, but not simply bolding or underlining the name) or a key identifying which individual(s) listed in fields c-g above are attorneys (or paralegals or other legal staff carrying out a legal function for an attorney). If an email thread is redacted on the basis of attorney-client or work product privilege and the name(s) of any attorney(s) on the thread are not automatically populated in fields c-g above (e.g., because the attorney(s) are copied on a lesser-inclusive email in the thread), the log shall contain an additional field listing the name(s) of said attorney(s).

The Producing Party shall also include a field with the asserted privilege type(s) (e.g., work product).

If the Requesting Party believes that an entry on the log does not include sufficient information to assess the basis of the privilege, the Requesting Party may request additional information regarding the withheld document during a meet and confer with the Producing Party.

If, after receiving such additional information, the Requesting Party in good faith has reason to believe a particular entry on the log does not reflect a privileged document, or if the Producing Party does not provide the requested additional information, the Parties will meet and confer regarding the next steps, including whether Court intervention is needed.

**D.** For paper documents, the log will include these standard fields: author/sender/from; recipients/to; cc; bcc; date; document type; privilege type; and a description sufficient to identify the subject of the document and the basis for the privilege assertion.

Documents dated after the filing of this Litigation containing privileged and/or work product material relating to this Litigation do not need to be logged unless the Requesting Party identifies a good cause for such a log.

**E. Rolling Production of Privilege Logs:** Consistent with the Court's Individual Rules and Practices in Civil Cases § 4(k)(vi), "Privilege logs must be promptly produced and updated on a rolling basis as documents are produced." The Producing Party shall make reasonable efforts to provide a privilege log for each production made in this Litigation within forty-five (45) days of that production date. To the extent a Producing Party provides multiple, or supplemental, privilege logs, each such log should contain all previous privilege log entries, such that each privilege log can supersede all prior privilege logs, with any changes to previously produced privilege log entries clearly identified. Moreover, consistent with the Court's Individual Rules and Practices in Civil Cases § 4(k)(vi), "Each log and update must include a certification from counsel that counsel has reviewed the withheld or redacted documents, and that there is a good-faith basis to assert privilege over those documents." A final log will be produced within thirty (30) days following the date of substantial completion.

**F. Challenges to Privilege Claims:** Following the receipt of a privilege/redaction log, a Requesting Party may identify, in writing, the particular documents or categories of documents that it believes require further explanation. The Producing Party shall endeavor to respond to such a request within 14 days. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution.

## VIII. MISCELLANEOUS PROVISIONS

**A.** Nothing herein limits the rights of a Producing Party to object to any Document Request or other discovery request for any reason. Unless and until a Producing Party agrees to produce ESI in response to a given Document Request, it need not propose Document Custodians (or other Non-Custodial sources) or search terms applicable to that Request.

**B.** **Objections Preserved:** Nothing in this ESI Protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

**C.** **Variations or Modifications:** Variations from this ESI Protocol may be required. Any practice or procedure set forth herein may be varied by agreement of all affected Plaintiffs and all affected Defendants. In the event a Producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, the Producing Party will notify the Requesting Party of the variation or modification. Upon request by the Requesting Party, those Parties will meet and confer to address any issues in a reasonable and timely manner prior to seeking Court intervention.

**SO STIPULATED AND AGREED.**

DATED: October 15, 2026

**KAHN SWICK & FOTI, LLC**

*/s/ Kim E. Miller*
Kim E. Miller (KM-6996)
230 Park Avenue, 3rd Floor West
New York, NY 10169
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
Email: kim.miller@ksfcounsel.com

-and-

J. Ryan Lopatka (admitted *pro hac vice*)
33 N. Dearborn Street, Suite 1000
Chicago, IL 60602
Telephone: (312) 759-9700
Facsimile: (504) 455-1498
Email: j.lopatka@ksfcounsel.com

-and-

Craig J. Geraci, Jr. (admitted *pro hac vice*)
Matthew P. Woodard (admitted *pro hac vice*)
Alexandra Pratt (admitted *pro hac vice*)
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
Email: craig.geraci@ksfcounsel.com
Email: matthew.woodard@ksfcounsel.com
Email: alexandra.pratt@ksfcounsel.com

*Counsel for Lead Plaintiff Amir Konigsberg and Lead Counsel for the Proposed Class*

DATED: October 15, 2026

**LABATON KELLER SUCHAROW LLP**

*/s/ Lauren A. Ormsbee*

Lauren A. Ormsbee
David Saldamando
Alexandra E. Forgione
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: lormsbee@labaton.com
Email: dsaldamando@labaton.com
Email: aforgione@labaton.com

*Counsel for Lead Plaintiff Allegheny County Employees' Retirement System and Lead Counsel for the Proposed Class*

DATED: October 15, 2026

**LATHAM & WATKINS LLP**

*/s/ Colleen C. Smith*

Colleen C. Smith (admitted *pro hac vice*)
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
Email: colleen.smith@lw.com

Megan A. Behrman
Thomas J. Giblin
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: megan.behrman@lw.com
Email: thomas.giblin@lw.com

*Attorneys for Defendants*

## ATTESTATION PURSUANT TO ELECTRONIC CASE FILING RULE 8.5

I, Kim E. Miller, attest that concurrence in the filing of this document has been obtained from all other signatories.

*/s/ Kim E. Miller*
Kim E. Miller

**SO ORDERED.**

Dated: October 16, 2026

HONORABLE DALE E. HO
UNITED STATES DISTRICT JUDGE

The Court retains the discretion to allow disclosure of any subject covered by this stipulation or to modify this stipulation at any time in the interest of justice.

**APPENDIX 1**

ESI Metadata and Coding Fields

| DAT File Field Name | Database Field Name | Sample Data/Formats | Description |
|---|---|---|---|
| BEGDOC | Prod Begin Bates | DOC_000001 | Begin Bates Number |
| ENDDOC | Prod End Bates | DOC_000002 | End Bates Number |
| BEGATTACH | Prod Begin Attach | DOC_000001 | Begin Bates number of family unit |
| ENDATTACH | Prod End Attach | DOC_000004 | End Bates number of family unit |
| CUSTODIAN | CustID::display Name | Smith, John | Individual from whom the document originated |
| ALLCUSTODIANS | All Processed Custodies::display Name | Smith, John; Smith, Jane | All individuals who have the document |
| PAGECOUNT | Prod Page Count | 2 | Total number of pages in the document |
| PARENTID | Prod ParentID | DOC_000001 | Begin Bates number of parent document |
| ATTACHIDS | Prod AttachIDs | DOC_000003; DOC_000004 | Begin Bates number of each child attachment separated by ";" |
| FROM | From | Jane Smith (jane@smith.com) | Author of the e-mail message |
| TO | To | John Smith (john@smith.com) | Main recipient(s) of the e-mail message |
| CC | CC | Frank Thompson (frank@thompson.com) | Recipient(s) of "Carbon Copies" of the e-mail message |
| BCC | BCC | John Cain (john@cain.com) | Recipient(s) of "Blind Carbon Copies" of the e-mail message |
| DOCUMENT SUBJECT | Document Subject | Chain Letters | Subject field extracted from the metadata of the native file |

| | | | |
|---|---|---|---|
| EMAIL SUBJECT | Email Subject | FWD: Chain Letters | Subject field extracted from the metadata of an email file |
| DOCUMENT TITLE | Document Title | My First Document | The title of a document |
| DOCUMENT AUTHOR | Document Author | jsmith | Author field extracted from the metadata of the native file |
| CREATED DATE | Created Datetime | 1/30/2000 | Date file was created |
| CREATED TIME | Created Datetime | 16:30:05 | Time file was created |
| FAMILY DATE | Family Datetime | 1/30/2000 | For Families: Date of the Parent document. For Single-Loose Files: Date of the Document. Logic: 1. Email – Sent Date 2. Electronic Loose File – Last Mod Date |
| FAMILY TIME | Family Datetime | 16:30:05 | For Families: Time of the Parent document. For Single-Loose Files: Time of the Document. Logic: 1. Email – Sent Time 2. Electronic Loose File – Last Mod Time |
| LAST MODIFIED DATE | Last Modified Datetime | 1/30/2000 | Date document was last modified |
| LAST MODIFIED TIME | Last Modified Datetime | 16:30:05 | Time document was last modified |
| EMAIL SENT DATE | Email Sent Datetime | 1/30/2000 | Date email was sent |
| EMAIL SENT TIME | Email Sent Datetime | 16:30:05 | Time email was sent |
| FILE SIZE | File Size | 765952 | File size in bytes |
| PATH | File Path | Email: /doe_john.pst\FW: Title<br>Electronic Loose File: \Financials\Q1_Status\Demo.doc | Original Path to the document. Includes Folder information |

| | | | |
|---|---|---|---|
| | | | for Emails, Windows Directory structure for loose files |
| EXTENSION | File Extension Original | ppt | Original extension of a file (null for emails from container) |
| FILE TYPE | File Type | presentation | File Type: email, image, spreadsheet, presentation, etc. |
| MD5 HASH | MD5 Hash | 1d30c0ebc0e319b4e8147559b426 67c1 | Unique identifier of the file |
| FILENAME | Filename | DemoPresentation.pptx | Original name of the file or subject of email |
| TEXTLINK | Generated upon export | .\PRODNAME\TEXT\TEXT001\ DOC_000001.txt | Contains Path to .TXT files |
| NATIVELINK | Generated upon export | .\PRODNAME\NATIVES\NATIV ES001\DOC_000001.pptx | Contains path to native files |
| CONFIDENTIA LITY DESIGNATION | Confidential | Confidential | The level of confidentiality assigned to the document, if any, by Counsel |
| REDACTIONS | Redactions | Y | Whether the document contains redactions applied by Counsel |
| IMPORTANCE | Importance | Important | Email high priority flag |
| ATTACHCOUNT | Attachment Count | 2 | Number of attachments to the parent document |
| ATTACHNAME S | Attachment Names | Weekly Summary, Cover Letter | Names of attachments to the parent document |
| DATERCVD | Date Received | 10/10/2025 | Received date of email message (mm/dd/yyyy format) |
| TIMERCVD | Time Received | 10:33 AM | Received time of email message, time zone set to GMT |
| HIDDEN DATA | Hidden Data | Y | Whether any hidden data exists in the document |
| IS EMBEDDED | Is Embedded | Y | Whether the document is an |

| | | | |
|---|---|---|---|
| | | | embedded object extracted from a parent document. |
| PRODVOL | Production Volume | 8 | Production volume |
| EMAIL THREAD FAMILY ID (if email threading is used by Producing Party) | Email Threading | N/A | Unique identifier from email threading algorithm to denote emails from a single thread and all attachments |